## No. 12,239.

KINGDOM OF GILPIN MINES, INC., *v.* MCNEILL.
(291 Pac. 1036)

Decided September 15, 1930.

Mr. NORTON MONTGOMERY, Mr. ERSKINE R. MYER. Mr. HORACE N. HAWKINS, JR., for plaintiff in error.

Mr. LEROY J. WILLIAMS, for defendant in error.

*In Department.*

MR. JUSTICE ADAMS delivered the opinion of the court.

McNEILL sued Bierbaum and Kingdom of Gilpin Mines, Inc., hereinafter called the company, to foreclose an equitable lien covering certain real estate and mining property belonging to the company. The plaintiff prevailed and the defendant company brings the case here for review. Bierbaum is not a party to the writ of error.

The chain of title to the property involved, as far as this case is concerned, was first vested in Bierbaum. He deeded it to one Albertson, and the latter deeded it forthwith to the company. Albertson was a promoter, organizer, president and director of the company. McNeill's claim is for services theretofore rendered over a period of about six years, in connection with, and for the benefit of, the property. During Bierbaum's ownership, McNeill filed mechanic's lien statements in the office of the county clerk of Gilpin county, but did not foreclose. He refrained therefrom because of a new agreement made by him with Bierbaum and Albertson, which took the place of the former lien. The last named agreement is the one on which suit was brought and judgment rendered. It gave the debtor an extension of time, but fixed the amount of the indebtedness in a sum largely in excess of the original amount claimed, and provided that it should be secured by a lien on the property involved. This last named agreement was not recorded.

The complaint as amended shows affirmatively that the lien created by the final agreement was orally made. The existence of such lien was fully established, in part by oral testimony, in part by letters from Albertson to McNeill and further by a recital contained in certain escrow instructions to a bank during one stage of preliminary negotiations, while Albertson was making unsuccessful

efforts to raise money by means of a proposed bond issue to satisfy the debt to McNeil, and to obtain funds for other corporate purposes on behalf of plaintiff in error. The deed from Bierbaum to Albertson and the deed from the latter to the company contain this clause: "Subject to two certain liens of record, one to John McNeill [defendant in error] and one to Con K. O'Byrne." O'Byrne's lien is not involved in this suit. The cause was tried without a jury and there are no assignments of error going to the admission or rejection of evidence.

The assignments of error are very general. We have changed the numerical order in which they appear, so as to conform to the arrangement of the argument and this discussion. The assignments that are argued allege error by the trial court in the following particulars: (1) In overruling the demurrer of the plaintiff in error to the complaint; (2) in finding and decreeing a lien on the property and in the order of sale; and (3) that the findings and decree are contrary to law and contrary to the evidence.

1. Counsel for the company are mistaken in the above first assignment. The demurrer to the complaint was sustained and plaintiff afterwards amended twice. However, we give counsel for the company the benefit of their evident intention to refer to its subsequent demurrer to the complaint as amended, and not to the original complaint. The demurrer to the complaint as amended was on the sole ground that it failed to state a cause of action. Counsel for the company seek to employ this general demurrer as a basis for an argument that McNeill's lien failed to satisfy section 5105 of the statute of frauds and perjuries, which reads as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over, or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by

the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing.''

A defense based on the statute of frauds is one of which a defendant may or may not avail himself, at his option. If relied upon, it must be specially pleaded and raised by demurrer or answer, as the case may be, and to insure consideration by this court, must also be covered by an appropriate reference in the assignments of error. *Pettit v. Mayhew,* 43 Colo. 274, 276, 95 Pac. 939. The argument concerning the statute is disconnected with the defense interposed either at the trial or in this court, and must therefore fail. From the standpoint of pleading, it is analogous to the statute of limitations, as to which we have held that such defense cannot be raised by general demurrer or general denial. *Yost v. Irwin,* 53 Colo. 269, 125 Pac. 526; *Jasper v. Bicknell,* 68 Colo. 308, 312, 191 Pac. 115. The rule stated is applicable in law and logic to both statutes and there is no reason to make an exception as to either of them.

2. Under the above second and third assignments of error, counsel for the company argue that there is no valid lien affecting the property or its present owner, the defendant company. The evidence is fatal to this assignment. It is apparent that Albertson lulled McNeill into an abandonment of his statutory mechanic's lien, by alluring promises of another lien for a larger amount, to be satisfied at a later date, on which McNeill relied. Albertson as a witness denied it, but his letters to McNeill, couched in terms of intimate friendship, written at or about the time when the deal was rife, state the fact of the lien and the amount of the debt. These letters, with other evidence, are sufficient to overcome Albertson's faulty memory on the witness stand.

3. The claim of the company that it did not make the contract can be answered in a word. It is too plain for citation of authorities that an encumbrance on land, when once established, is not dependent on the will

of a subsequent purchaser. There could be no security at all if this were so. It is also perfectly evident that Albertson, as promoter, organizer, president and director of the company, was acting for and on its behalf, as indicated by his dealings with Bierbaum, McNeill, a bank and all concerned. Albertson did not hold title to the property longer than was necessary to turn it over to the company. He held it only as an intermediary. The transaction involved a deal of magnitude and importance, too large for the ordinary man to handle without financial assistance, and the negotiations eventually culminated in the acquisition of the property of the company, subject to McNeill's lien. If it be true, as counsel for the company argue, that the proviso in the deeds of conveyance did not cover the lien in question, it only tends to establish the breach of agreement to make the transfer subject to such burden. McNeill was not a party to the deeds.

4. Counsel for the company argue that it did not have notice of the lien, but if diligent search had been made to discover the proper recipient of official notice thereof to the corporation, it is impossible to conceive of any officer on whom service could have been made, possessing greater authority or qualifications to accept service than Albertson himself. His knowledge was the knowledge of the company, and it was not necessary to apprise the company of facts of which it was already cognizant. It cannot enjoy the benefits of a broken promise, nor shake off the lien without paying the debt.

Judgment affirmed.

Mr. Chief Justice Whitford, Mr. Justice Moore and Mr. Justice Burke concur.