## No. 12,933.

ROBINSON *v.* BELMONT-BUCKINGHAM HOLDING COMPANY.
(31 P. [2d] 918)

Decided March 26, 1934.

Messrs. GILLETTE & CLARK, Mr. FREDERICK SASS, for plaintiff in error.

Mr. L. WARD BANNISTER, Mr. SAMUEL M. JANUARY, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE parties are aligned as at the trial. Miss Robinson will be referred to as plaintiff and Belmont-Buckingham Holding Company, a corporation, as defendant, or the company. Plaintiff brought an action against the company to recover for personal injuries sustained by her as the result of falling on a cement walk in front of the Belmont apartments, in Denver, owned by the company. Plaintiff prosecutes error to review a judgment of nonsuit.

The apartments and surrounding grounds occupy a city block, bounded by Sherman street on the west, Grant street on the east, 10th avenue on the south and 11th avenue on the north. Opposite exits are provided, one facing Grant street and the other Sherman street. Plaintiff was a tenant of the building, occupying one of the apartments. She alleges, inter alia, that about eight o'clock in the morning on a day in the month of January, she left the building on the Grant street side, with the purpose of going to her place of employment in a downtown store; that snow was falling and had fallen on previous days, followed by thaws during the days and freezing during the nights, which made the sidewalks and streets generally slippery and dangerous. By reason of this condition, she avers, she had called a taxicab to

536

take her to her place of business; that she left the building and proceeded on foot with due care and caution, along a cement walk over the grounds of the company.

Plaintiff further alleges that the above walk extends a distance of about 92 feet from the exit of the building to the public cement sidewalk on Grant street; that the taxicab was waiting for her at the street curb immediately in front of the private sidewalk; that upon her arrival at or about the junction of the private sidewalk with that on the public street, she suddenly slipped and fell upon a sheet or body of ice which had formed on the sidewalk, and which rendered the place slippery and dangerous to pedestrians. The complaint also contains an allegation that the presence of such danger was not known to plaintiff and could not have been seen by her by reason of the place being covered with snow; also that her fall was caused solely and proximately by the carelessness and negligence of defendant, in that it knew, or by the exercise of reasonable care and diligence it would have known of the slippery and dangerous condition of the sidewalk and of the accumulation of ice thereon at the place where plaintiff fell; that defendant failed to make any effort to remove the ice, or to scatter ashes, sand or other nonskid material thereon, or to erect any danger signal thereon, or to in any manner make the said sidewalks reasonably safe for pedestrians entering or leaving the apartment building. Plaintiff further alleges in detail her personal injuries of a serious and permanent nature sustained as a result of her fall, and in substance that she thereby became so incapacitated as to cause her to lose a lucrative position in a Denver department store. The complaint concludes with a prayer for damages. Defendant's answer contains general and specific denials and alleges contributory negligence.

Mont Gwinup, president, resident manager and director of the company, who lives in an apartment on the premises, was called for cross-examination under the statute. He testified that his duties were to keep the

place filled up, keep it in the best possible condition and to see that it was so kept; that he personally went over the walks and inspected them when it was snowing and after a snow; that he was very careful and never failed as he recalls; that he had no independent recollection of inspecting the walks on the January second in question and could not say when he inspected them last prior thereto; that he employed the janitors and that they were on duty at the time; that it was the duty of Mattson, one of the janitors, to clear off the snow and keep the walks clean; that he always carried out his instructions as far as the witness knew, and that Mattson had an assistant to help him. The witness further testified that Mattson was a sick man, and "that is one of the reasons we had to make a change. * * * I know he was feeling sick and he said he was sick." The witness further said that Mattson told him the walks were clean and he relied upon him.

 The evidence is clear that the sidewalk was in a dangerous condition and the result demonstrates it. Plaintiff sustained serious permanent injuries as a result of her falling on the ice under the snow on the sidewalk. She testified, among other things, that there were "little patches here and there on the walk," from a foot to a foot and one-half in diameter, "possibly some of them eight or ten inches." The evidence further shows there is a decided slope from the apartment building, and that at the place where she fell there was a flat depression where water accumulated; it was snowing on the day when she passed out of the building and all she could see was snow. We employ the common rule that in a motion for nonsuit, the evidence must be construed in the light most favorable to plaintiff.

 It is argued that plaintiff knew, or should have known, of the dangerous condition of the walk and that she therefore assumed the risk of using it, but we must differ. Even if she had such knowledge, it did not make her a captive in her room; she was obliged to leave the

building to go to her work. Everybody knows that ice is slippery, but she need not have surmised that patches of ice would be left on the sidewalk, and she was not compelled to gauge their invisible location under the snow. Defendant's partial observance of rules of safety does not exonerate it at the point where its omission resulted in a catastrophe. The very fact that defendant regularly cleaned the sidewalks gave the tenants the right to assume that it would be done in a workmanlike manner. Even at that, plaintiff cautioned a companion with whom she was walking to be careful; the jury, if it had been given the case, might have well believed from the evidence in its entirety that plaintiff's mind was alert to danger and that she used extraordinary care to escape it.

It is suggested that the accident would not or might not have occurred if plaintiff had gone out of the Sherman street doorway. Nobody knows what might have happened if she had left the building through that exit, but the suggestion is speculative and irrelevant. The Grant street side of the building which she used was likewise constructed for the accommodation of pedestrians, and was arranged for the approach of taxicabs and other vehicles. There was an implied invitation to use either entrance and exit, and plaintiff was at liberty to choose between them.

It is only where there is an entire absence of testimony tending to establish the case that a nonsuit may be properly ordered or a verdict directed. Where the question depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination. *Longmont v. Swearingen*, 81 Colo. 246, 250, 254 Pac. 1000; *Arps v. Denver*, 82 Colo. 189, 257 Pac. 1094. "We have repeatedly held that where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury." *Sprague v. Herbel*, 90 Colo. 134, 140, 6 P. (2d) 930, citing numerous other decisions of this court.

Defendant contends that the duty of a landlord to make general repairs does not extend to temporary obstructions arising from natural causes, such as accumulations of ice or snow, but surely defendant would not expect this necessary labor to devolve upon the *tenants* of a large apartment house. The fact that the defendant company itself had a broader conception of its duties than this is apparent from the testimony of its president and general manager; that it failed in the exercise of its duty presents another question. To agree with defendant on this point of its liability would place thousands of city residents in jeopardy and would be inimical to modern urban life.

Since plaintiff established a prima facie case to go to the jury, the judgment is reversed and the cause remanded with instructions to set aside the judgment of nonsuit and proceed accordingly.

MR. JUSTICE BURKE and MR. JUSTICE BOUCK concur.