## No. 14,017.

### MAYER OIL COMPANY ET AL. *v.* SCHNEPF.

(69 P. [2d] 775)

Decided June 7, 1937.

Messrs. Bartels, Blood & Bancroft, Mr. Arthur H. Laws, for plaintiffs in error.

Mr. Chester A. Bennett, for defendant in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

In the court below the defendant in error was the plaintiff and the plaintiffs in error were the defendants. We shall here refer to them as they were aligned in the trial court.

The action was instituted by the plaintiff to recover for services rendered and labor performed by himself and his assignors in connection with certain oil well drilling operations in Larimer county. At the conclusion of the plaintiff's case the court denied defendants' motion for nonsuit and defendants elected to stand upon the motion. Judgment was thereupon entered in favor of the plaintiff for the amount claimed under the complaint less attorney's fees and certain statutory penalties waived by plaintiff.

At some time previous to the period covered by this suit the defendant, the Mayer Oil Company, assumed the liabilities of a contract with one Mosher for drilling a well on certain premises or on lands in which the company was interested. The Johnson Ranch Royalty Company, Inc., was interested in the well to the extent of some royalty arrangement. Mr. Mayer was the president and manager in control of operations and a Dr. Wilson was the secretary of both defendant companies. Mr. Gee was a director of both companies and Mayer, Wilson and Gee constituted the full board of directors of the Johnson Ranch Royalty Company, Inc., and three of the five directors of the Mayer Oil Company. The plaintiff and his assignors were employed by Mosher, the contractor, to work upon the well and on January 24, 1932, he was indebted to them for back wages. The plaintiff alleges that on or about that date the plaintiff and his assignors suspended work and refused to continue until they were paid and for the purpose of inducing the men to return to work the Mayer Oil Company, with knowledge of the insolvency of the contractor and to avoid any delay, promised and agreed with the plaintiff and his assignors that if they would return to work and not suspend operations, the Mayer Oil Company would pay all the amounts due and to become due the said employees in drilling the well to completion, and that in consideration of this arrangement the employees continued to render labor and

services until June 10, 1932, at which time the balance alleged to be due them was unpaid.

With reference to the Johnson Ranch Royalty Company, Inc., the complaint alleges that this defendant promised to pay plaintiff and his assignors for the work done on the well and that the company did make some payments and then defaulted, leaving the amounts sued for due.

The complaint further alleged liability against the defendant companies and particularly the Mayer Oil Company, under the provisions of what is generally known as the "wage act," chapter 55, S. L. 1901, as amended by chapter 183, S. L. 1919, alleging a violation of said act in the failure of the companies to pay the employees their wages every fifteen days, and alleging that under chapter 97, section 205, '35 C. S. A. (§4231 C. L. 1921), being section 5 of the Act of 1919, supra, relating to work done for private corporations by a contractor, the defendants by operation of law were liable to the unpaid employees of the contractor. The defendants questioned the constitutionality of this act and particularly C. L. section 4231, supra, and also contend that plaintiff's cause of action, in so far as it is based upon said section, is barred by the one year statute of limitations (§6399 C. L. 1921).

A considerable portion of the briefs is devoted to discussion of the provisions and applicability of the wage act to the case at bar. However, under the disposition we make of the case there is no necessity of our passing upon these issues.

 As we have indicated, the plaintiff pleaded an original agreement and undertaking on the part of the defendant companies to pay the plaintiff and his assignors for their labor. The defendants' motion for nonsuit admits the truth of the evidence produced by the plaintiff in the sense most unfavorable to the defendants and every inference of fact legitimately deducible therefrom. *Whitehead v. Valley View Co.*, 26 Colo. App. 114, 141 P.

138; *Robinson v. Belmont Co.*, 94 Colo. 534, 31 P. (2d) 918; *Longmont v. Swearingen*, 81 Colo. 246, 250, 254 Pac. 1000; *Arps v. Denver*, 82 Colo. 189, 257 Pac. 1094.

Dr. Wilson, the secretary of the two companies, was called by the plaintiff as an adverse witness under the statute and testified that at the time plaintiff's alleged independent contract was made he knew that Mosher, the contractor, had not paid his employees and that he had discussed the matter with Mr. Mayer and Mr. Gee who held the official positions in the company we have indicated, and that they all knew of the situation; that Mayer, in witness' presence, had told the men at or about the time they had ceased work in January, 1932, he would see they were paid. The plaintiff testified that upon the occasion of their suspending work, plaintiff and his assignors went to the town of Berthoud and talked to Dr. Wilson, who, according to plaintiff, stated: "He would look after it himself and see that we got our money if we promised to go out next morning and get things going," and that he went back to work on the basis of these representations. Plaintiff's testimony in this respect was substantiated by that of his assignors, and the conversation was not denied by Dr. Wilson. It would further appear that on other and different occasions both Wilson and Mayer told plaintiff and his assignors they would guarantee the money if the men would continue to work on the well. It is undisputed that after the men returned to work a number of payments were made to them by checks of the Johnson Ranch Royalty Company, Inc., or by Mayer's personal checks. These checks were delivered to the men either by Dr. Wilson or by Mayer and were sometimes written by the latter at the site of the drilling operations.

██ ██ Defendants point out that in none of these conversations was there any definite statement by Dr. Wilson or Mr. Mayer that either of the companies assumed the obligation of paying the accrued or future wages due the plaintiff and his assignors. We cannot say,

however, as a matter of law that it might not be inferred from the testimony that in making the definite promise attributed to them they were acting, and intended to act, in behalf of the companies of which they were the principal officers. The fact that the subsequent payments to the men were made from the funds of one of the companies might well indicate the promise was made on behalf of the corporations and ratified by them. As pointed out in the case of *Kingdom of Gilpin Mines v. McNeill*, 88 Colo. 44, 291 Pac. 1036, knowledge of the principal officers of the company legally was the knowledge of the company. No question is raised with respect to the power of the officers to make this arrangement for the corporation. The evidence of the plaintiff could be of a more satisfactory and definite character but we believe it does present a state of facts from which different minds might honestly draw different conclusions on the subject of the alleged agreement and such being the case, under the decisions of this court which we have heretofore cited, the trial court could have done nothing but overrule the motion for nonsuit.

The defendants assert that the independent verbal agreement relied upon by plaintiff, which we have just discussed, is void under the statute of frauds, section 5111, subsection 2, C. L. 1921. This question has already been disposed of adversely to the contention of the defendants upon several occasions. *Moon v. Greenlee,* 69 Colo. 482, 195 Pac. 1110; *Spelts v. Anderson,* 67 Colo. 63, 185 Pac. 468; *Bloom v. McPhee & McGinnity Co.,* 26 Colo. App. 256, 143 Pac. 825.

*Moon v. Greenlee, supra,* is a case in which the facts were somewhat analogous to those of the one at bar, except that there Moon made the promise in his own behalf and not for a corporation. In that case, pages 483, 484, it was said: "Upon the trial of the cause there was testimony to support the allegations of the complaint, and to the effect that, when Moon learned that the miners had not been paid, and that in consequence thereof they were

refusing to return to work, he [Moon] said, in the presence of all of them, that he was interested in the property, and wanted it developed; and that, if they would return to work, he would pay the wages then due, and for such work as they might thereafter do. * * * the facts alleged constitute an original promise. * * * 'when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute.' "

The evidence in the case at bar is very convincing to the effect that both the defendant companies and their officers were definitely interested in the completion of the well and anxious that the drilling operations proceed at the time the agreements relied upon by the plaintiff and his assignors were made.

As one of the defendants' defenses it was pleaded that the plaintiff and his assignors had released or waived all claims or demands which they had against the defendants. During the course of the plaintiff's case, when he and his assignors were on the witness stand, the defendants produced certain receipts which the respective witnesses admitted they had signed and which defendants assert release the companies from any obligation to the plaintiff and his assignors. The signatures of the plaintiff and his assignors to these typewritten slips were secured from time to time beginning in February, 1932, and continuing until April of that year, upon the occasions when the plaintiff and his assignors were given checks or paid money by Dr. Wilson or Mr. Mayer. These receipts were in the following form: "Date............. This will acknowledge receipt of $........ [here was inserted the amount paid] from [either Warner & Mosher Drilling Company or the Johnson Ranch Royalty Company, Inc.], *as part payment of labor, or services rendered,* on the * * * well, and as a consideration for such payment, this receipt shall serve as a statement by the undersigned that any manner of claims is here-

with waived as to, or against, the [here was inserted in various receipts, either the names Ed. R. Mayer, the Mayer Oil Company, or the Johnson Ranch Royalty Company, Inc.], either in the past, or in the future, unless specified in writing." It can legitimately be inferred that the statements in these receipts to the effect that they were for part payment of labor and services rendered on the well being drilled refer to the agreement relied upon by plaintiff, since previous to that time no one contends that either of the companies was liable by contract for plaintiff and his assignors' wages. Under this view it might as consistently be said the receipts were written evidence of the pre-existing oral agreement as they can be taken for releases or waivers as claimed by the defendants.

In addition to the receipts just mentioned the defendants, during the cross-examination of the plaintiff and his assignors, identified their signatures on other receipts and voucher checks signed at the time the checks were received or cashed, bearing notations, "labor in full" to a specified date, and in one case the plaintiff signed a receipt dated May 25, 1932, on which was written "as full payment for hauling on * * * well." These receipts and vouchers were offered by the defendants and admitted in evidence not as showing payment of the amounts specified as credits on the account sued upon but upon the theory that they constituted complete releases or waivers from the signers. We believe they cannot be given this effect, the receipts upon the basis we have heretofore indicated and the vouchers or check endorsements for the obvious reason that they only covered labor rendered for which, under the plaintiff's theory, the defendants were obligated to pay in any event. None of them were signed at the time of or subsequent to the discharge of the plaintiff and his assignors and the termination of the work. These receipts, vouchers and checks undoubtedly would be conclusive of payment in the sums specified in establishing the ultimate amount due

the plaintiff and his assignors, but cannot be considered as constituting a general release of the obligation of the defendants to pay the plaintiff and his assignors past and future wages. While the matter is not particularly pertinent in view of defendants' motion for nonsuit, it would seem from a casual examination of the record, that the plaintiff and his assignors gave the defendants credit for all these payments in arriving at the amount they claim to be due.

In the defendants' reply brief it is suggested that the plaintiff and his assignors are in no position to claim that these signed releases and vouchers are not conclusive as waivers or releases in that the replication only makes general denial to the allegations of new matter contained in the answer. The answer pleaded waiver and release as an ultimate fact and did not set out the purported releases or waivers haec verba. Under these circumstances there was no occasion for a plea in confession and avoidance by plaintiff since the admissions by witnesses of the signing of the instruments mentioned would not preclude them from disputing their legal effect as releases or waivers.

The judgment is affirmed.

MR. JUSTICE HILLIARD not participating.