No. 15,180.

JONES, CONSERVATOR *v.* MAWSON-PETERSON LUMBER COMPANY.
(150 P. [2d] 795)

Decided July 3, 1944.

494

Mr. William R. Kelly, Mr. Tracy C. Cameron, Mr. John C. Nixon, for plaintiff in error.

Mr. Clay R. Apple, Mr. L. J. West, for defendant in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

This is a case in which the Mawson-Peterson Lumber Company, defendant in error, plaintiff below, brought suit to recover judgment against one George Osborne, who does not appear as a party plaintiff in error here, and one Mrs. Siltamaki (who subsequent to the trial below was declared a mental incompetent, and who is represented here by one Jones, conservator of her estate, Jones having been substituted in her stead), for the sum of $890.49 and interest, allegedly due it for materials furnished for the erection of a garage building, and asked that a decree be entered foreclosing a mechanic's lien on the premises on which was located the building constructed from the materials furnished, and that the "premises be sold in satisfaction of said debt lien and costs as in the case of foreclosure of mortgages." Judgment was rendered for the lumber company as prayed,

and plaintiff in error Jones seeks reversal of that judgment at our hands.

It appears that prior to the spring of 1941, Osborne and Mrs. Siltamaki had several business dealings in which she had loaned him money, which loans were generally evidenced by notes and chattel mortgages. In May, 1941, Osborne apparently convinced Mrs. Siltamaki that the construction and operation of a garage near Greeley would be a profitable deal for them. Osborne then entered into a lease agreement on June 5, 1941, with one Nusbaum, by her agent, Davis, covering certain lots in Rosedale, a suburb to the south of Greeley. On June 10th arrangements were made with the lumber company for delivery of materials to Osborne for the erection of the garage on the above mentioned lots subsequent to an agreement as to the source of payment for such material. The record discloses that Mr. Mawson, vice-president of the lumber company, asked Osborne who was going to pay for the material and that he replied that Mrs. Siltamaki was going to furnish the money; that Mawson thereupon called Mrs. Siltamaki on the telephone and told her that Osborne had requested materials with which to build a garage and had said that she was going to furnish the money; that Mrs. Siltamaki replied, "Yes, that was right, that she was going to put up the money." Mrs. Siltamaki denied that she had any such conversation and testified that she was very ill at that time, and "wasn't able to get to a telephone." Mrs. Siltamaki advanced several hundred dollars to Osborne who was in charge of the construction of the garage, and he paid most of the bills for labor and material until about the middle of July, when things became so involved that neither Osborne nor Mrs. Siltamaki seemed to know where they stood. Osborne was unable to meet the obligations and Mrs. Siltamaki advised the creditors to see her lawyer, John C. Nixon, who had represented her for a number of years. Nixon thereupon paid several of the workmen and guaranteed

future payment for their work if they would complete the building. He also tried unsuccessfully to get the lumber company to take a second mortgage subject to the Nusbaum lien by way of a compromise settlement. The lumber company then decided to file a mechanic's lien on the property and the lien statement was prepared by Nixon, which was filed for record September 30, 1941. The title to the property during the month of July was in Mrs. Nusbaum, and it is agreed that the lien was not effective as against her. July 29th Osborne assigned all his interest in the lease to Mrs. Siltamaki, and thereafter Nixon, or Mrs. Siltamaki, made whatever payments were due. Mrs. Siltamaki purchased the property from Mrs. Nusbaum on October 23, 1941, taking a warranty deed therefor "subject to all liens, incumbrances and claims of every kind and character whatsoever against said described premises and/or improvements thereon." October 24th Mrs. Siltamaki conveyed the premises to one Wineland for $3,140, he giving back a deed of trust to her for $3,000.

On the evidence the trial court, sitting without a jury, found that Mrs. Siltamaki was a part owner of the building within the meaning of the mechanics' lien statute (chapter 101, '35 C.S.A.) and that the lumber company was entitled to a lien upon the structure for the materials delivered to Osborne and to have the same foreclosed; that the real estate became subject to the lien when the title was acquired by Mrs. Siltamaki; that Mrs. Siltamaki and Osborne had agreed and entered into a joint venture for the erection of a public garage building on the aforementioned lots and that they were jointly and severally liable to the lumber company for the amount of the costs and materials furnished.

The ten specification of points of plaintiff in error are so intermingled it is difficult to segregate them, but the principal grounds argued for reversal are: 1. That the relationship between Osborne and Mrs. Siltamaki was simply that of debtor and creditor, and concomi-

tantly that Mrs. Siltamaki could not be held under the alleged oral promise given over the telephone. 2. That during the time all these matters were transpiring Mrs. Siltamaki was so ill and incapacitated as not to be chargeable under the law. 3. That under no circumstances was Mrs. Siltamaki an "owner" within the meaning of the mechanics' lien statute, supra. 4. Negligence of the lumber company in not ascertaining the true legal status of the property.

 1. As to the relationship between Osborne and Mrs. Siltamaki, the evidence does reveal that prior to this transaction it had been that of debtor and creditor. However, regarding this deal even Nixon admitted there was no note or mortgage given, and he testified that that was an oversight on his part and that he "was very negligent" in the matter. Osborne contended that it was a joint venture from the beginning, and a disinterested witness, who was not cross-examined, testified that Mrs. Siltamaki said to him, "You know George has been telling me that there is good money in a garage and so I think I will build the garage first. * * * She told me she would have to furnish George the money to build it." This conversation took place prior to June 10th. As to the telephone conversation between Mawson and Mrs. Siltamaki, the evidence is in sharp conflict, but there is sufficient competent testimony in the record to justify the trial court's conclusion on the point, and since the court found there was a joint venture, the oral promise became an original one and was not within the statute of frauds. *Redington v. Jenkins-McKay Hardware Co.*, 111 Colo. 363, 141 P. (2d) 891; *Mayer Oil Co. v. Schnepf*, 100 Colo. 578, 584, 69 P. (2d) 775.

 2. There is likewise conflict of evidence concerning Mrs. Siltamaki's illness. She had been severely injured in an accident the latter part of May, and was in bed part of the time, but there was no suggestion of her being mentally incompetent, and her lawyer handled this matter for her after the middle of July. There was

clearly no error in law in the trial court's ruling in this regard.

3. As to her being an "owner" within the meaning of the statute, we think it clear that she is such. It is apparently true that the lease to Osborne, though dated June 5th, was not actually signed until July 10th, but we think it fair to assume that the leasehold interest was acquired on June 5th when the lease was actually reduced to writing. after numerous discussions on the subject. In any event, Osborne commenced work on the premises immediately after June 5th and when Nixon took the assignment of the lease he did so to protect Mrs. Siltamaki's interest, after she had sent "her man" out to the premises in the middle of July.

That Mrs. Siltamaki had an interest to which the lien would attach, is supported by the following cases: *Cary Hardware Co. v. McCarty,* 10 Colo. App. 200, 50 Pac. 744, wherein it was held that if a party making improvements on realty holds possession of the land under a lease, or by virtue of a license where its authority is coupled with an interest, such party is the owner of the land within the mechanics' lien act. *Horn v. Clark Hardware Co.,* 54 Colo. 522, 131 Pac. 405. See, also, *Home Public Market Co. v. Fallis,* 72 Colo. 48, 209 Pac. 641, in which we held that an option for a lease which later ripened into a ninety-nine year lease was sufficient ownership on which the lien would attach, and *Bankers B. & L. Ass'n v. Fleming Bros. Lumber Co.,* 83 Colo. 335, 264 Pac. 1087.

4. Admitting that the record reveals some negligence on the part of the lumber company in not ascertaining the true legal status of the property, it became wholly immaterial to any issue in the case after Mrs. Siltamaki advised the company that she was going to put up the money.

The sole authority upon which plaintiff in error relies for reversal, is the case of *Stewart v. Talbott,* 58 Colo. 563, 146 Pac. 771. That case might be controlling if

Mrs. Nusbaum was still the owner of the real estate, and attempt was being made to foreclose as against her. Talbott and Mugivan in the Talbott case did not convey title, as did Mrs. Nusbaum to Mrs. Siltamaki here, nor did they finance the structure as did Mrs. Siltamaki. The record in the present case shows that Mrs. Siltamaki had an interest in the building from the beginning, and, that being so, "any lien provided for by this subdivision shall extend to and embrace any additional or greater interest in any of such property acquired by such owner at any time subsequent to the making of the contract or the commencement of the work upon such structure and before the establishment of such lien by process of law * * *." '35 C.S.A., c. 101, § 17.

We note that Mr. Kelly, attorney for plaintiff in error, who argued the case orally before us, did not appear as counsel in the trial of the case in the lower court.

Judgment affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE KNOUS and MR. JUSTICE HILLIARD dissent.