**Edson Keith HARTZELL, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 75–1603.

United States Court of Appeals, Tenth Circuit.

Submitted May 18, 1976.

Decided Aug. 9, 1976.

Ralph B. Harden, Fort Collins, Colo. (Charles S. Bloom, Fort Collins, Colo., on the brief), of Harden & Napheys, Fort Collins, Colo., for plaintiff-appellant.

Raymond J. Connell, Denver, Colo. (Robert W. Harris, Denver, Colo., on the brief), of Yegge, Hall & Evans, Denver, Colo., for defendant-appellee.

Before BARRETT and DOYLE, Circuit Judges, and TEMPLAR,* District Judge.

BARRETT, Circuit Judge.

Edson Keith Hartzell appeals from an adverse judgment following a five day trial to the court. His complaint and claim for damages are based upon personal injuries he allegedly sustained when he fell down stairways while departing the United States Air Force Academy football stadium following a football game between the Air Force and Stanford on November 14, 1970. He invoked jurisdiction pursuant to 28 U.S. C.A. § 1346(b), commonly referred to as the Federal Tort Claims Act. The gravamen of the action is founded on the statutory language rendering the United States liable for money damages ". . . for . .

---

* Of the District of Kansas, sitting by designation.

personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting in the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred". *See also* 1 Barron & Holtzoff (Wright Ed.), § 54, pp. 294–297.

Hartzell and his wife drove from their home in Boulder, Colorado, about 8:30 A.M. Saturday, November 14, 1970. They first encountered heavy, slushy snow conditions on the highway a few miles south of Denver which continued to a point about eight miles from the Air Force stadium known as the Garden of the Gods Club, where they met their friends, Mr. and Mrs. Lee Wills, for lunch. The Hartzells drove past the Academy site only some 30 minutes after blizzard conditions had visited the area that morning.

Mr. Hartzell had anticipated the adverse weather. He wore heavy clothing, including long underwear, wool pants, a pair of stadium boots, a sweater with a regular shirt and tie, a tweed coat, and a very heavy abercrombie coupled with a hat, gloves and scarf. He observed some six or eight inches of snow on the ground in the area of the Academy, an overcast sky, and windy, cold weather conditions. Following lunch, the party proceeded by auto to the stadium, some eight miles away. The trip required about an hour and a half and, as a result, they missed the entire first quarter of the football game. They entered the stadium from the north side where they encountered some difficulty on the steps which had been hit by heavy snows which fell on Friday and Saturday. Once inside the stadium, they proceeded safely to their seats. Even though it was quite cold and windy, the snow had been substantially removed from within the stadium except for that under the stadium seats.

It snowed at the Academy on Thursday, November 12th, resulting in some slush gathered in the stadium. A very heavy snow, of blizzard calibre, struck on Friday, November 13th, accumulating between four and five inches and creating drifts. Lt. Col. Shields, Chief of Facilities of the Academy Athletic Dept., directed the stadium manager and a snow removal crew of some 30 persons in snow removal on Thursday and a crew of 26 within the stadium from about 2:00 P.M. until after 5:00 P.M. Friday in removing the snow.

Another snowstorm occurred Friday night, rendering conditions very bad. On Saturday the stadium manager arrived at the stadium about 4:30 A.M. Snow commenced falling again by 5:00 A.M. that day which, with the high wind, created blizzard conditions which continued until about 10:00 A.M. Col. Shields and his regular work crew of some 25 to 30 persons commenced snow removal work in the stadium and access routes thereto at 5:00 A.M. In addition, some 75 husky high school boys were enlisted in the snow removal operation. By 8:00 A.M. more than 125 persons were working feverishly to clear the stadium, notwithstanding the extremely adverse conditions. Six persons were spreading Snowmelt throughout the stadium prior to the game.

During the game some 10 staff members spread Snowmelt on many icy areas, particularly the south and north entrance—exit stairways. Col. Shields examined both stairways prior to the game. He testified that they had been shoveled, that traction was good and that the Snowmelt was visible. He did detect snow and/or ice on the "side" or "edges" of the stairways. There are handrails on each side of the stairways and a third handrail in the center.

During the third quarter of the game, a spectator, Joseph L. Musso, left the stadium via the same south stairways that Hartzell subsequently fell from. Musso testified that he had entered the stadium through this stairway; that it was icy, slippery and snow packed at that time; and that the same conditions existed when he was exiting. Although he was proceeding carefully, Musso fell on the stairway and fractured his hip. An Air Force ambulance took him to the Academy hospital. This accident was

not announced on the loudspeaker, nor was anything said or announced relative to the condition of these stairways.

After the game, the Hartzell party first proceeded to the top of the stadium near the pressbox section to warm themselves. They there decided to exit by means of the south stairway, having recalled how slippery the north stairway was when they entered the stadium.

They proceeded down the walkway ramp and the vehicular ramp on the south stairway, both of which were free from snow and ice. When they reached the steps they found them to be slippery, irregular, snow packed and icy. Hartzell, who had suffered a serious back ailment which had been substantially alleviated by surgery in 1962 and 1964, proceeded cautiously down the stairs, at times linking arms with one of his group and holding to the handrail. A few steps from the bottom, Hartzell fell down and back, striking his head and back on the steps, sliding to the bottom of the stairway where he laid in a dazed condition, with severe pain in his lower back. With the aid of his party, he walked to the Wills' vehicle.

After returning to his home, Hartzell reported the fall and discomfiture to a Doctor Wolfe who advised him to wait a couple of weeks to see if the pain would not quiet down. It did not. A succession of consultations, examinations, and hospitalization followed until it was determined that he should undergo back surgery. This was done in a Texas clinic on January 6, 1972. Hartzell endured great pain as a result of the surgery. He was hospitalized for one month. When he returned to his home, he was unable to perform his work as a consulting engineer with the partnership firm of Hartzell-Pfeiffenberger and Associates, Inc., of Boulder which had been formed in 1969 and which had been very successful. Many more consultations, examinations, medication and other treatments followed, even to the time of trial. Hartzell incurred substantial medical—hospital expenses. In addition, he suffered great pain and substantial loss of income.

On appeal, Hartzell alleges that the trial court erred: (1) in its findings and conclusions that the United States acted reasonably and without fault in light of all of the facts and circumstances, (2) in its findings that Hartzell's pre-existing back condition was not aggravated by the fall he encountered in the stadium, thus eliminating the fall as a causation factor and (3) in admitting, over his objection, testimony concerning a disability rating and compensation award made to Hartzell by the Veterans Administration.

 Preliminary to discussion of the claimed errors, we believe that the scope of our review should be placed in proper perspective. A trial court's findings of fact which have support in the record, considered with its interpretation and application of the law of the state of the federal trial judge's residence, shall not be disturbed on appeal unless determined to be clearly erroneous. Fed.Rules Civ.Proc., rule 52, 28 U.S.C.A.; *United States Fidelity and Guaranty Co. v. United States,* 446 F.2d 851 (10th Cir. 1971); *Black v. United States,* 421 F.2d 255 (10th Cir. 1970); *see also Permian Corporation v. Armco Steel Corporation,* 508 F.2d 68 (10th Cir. 1974). The question on this appeal is not whether this appellate court, if involved in trial de novo, would resolve the controversy in the same manner as the trial court but only whether the trial court's decision is impermissible within the ambit of Colorado law, thus rendering it clearly erroneous.

### I.

The trial court held that:

The duty owing to the plaintiff as a spectator at the football game is the duty to exercise reasonable care to have the premises in a reasonably safe condition commensurate with the circumstances involved. That duty includes the responsibility for warning of any condition creating an unreasonable risk of injury which defendant knew or reasonably should have known to exist. In Colorado, the trier-of-fact is given wide latitude in determining the reasonableness of the de-

fendant's conduct in the failure either to remove or warn of any icy condition. *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 342 P.2d 1006 (1959); *Smith v. Mill Creek Court, Inc.,* 457 F.2d 589 (10th Cir. 1972) and *Eisenhart v. Loveland Skiing Corporation,* 33 Colo.App. 120, 517 P.2d 466 (1973). [R., Vol. IX, pp. 68, 69].

▇▇▇ We agree. The above-quoted recital is consistent with Restatement, Second, Torts, §§ 343 and 343A (1965), relating to the responsibility of a possessor of land to his invitee. In determining whether the possessor of land should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of the premises is a factor of importance indicating that the harm should be anticipated. The trial judge found, of course, that the harm was anticipated. The evidence led him to conclude that:

> In my view the efforts made to remove the accumulated snow from this stadium before the game were reasonable and appropriate to the circumstances. [R., Vol. IX, p. 69].

The trial court accepted as true Hartzell's testimony that his fall was caused by the slippery condition existing on the stair at that time and that the Academy personnel could have removed that condition or, alternatively, that an express warning could have been given by a loudspeaker announcement or through the use of attendants or warning signs on the stairs. Having so said, the trial court recognized the critical question to be whether the failure to remove or warn was unreasonable. [R., Vol. IX, p. 69]. The court then proceeded to review the circumstances and conditions surrounding the snow removal efforts prior to the game and found them reasonable. With respect to the failure to warn of the conditions on the north exit stairways via loudspeaker or other means, the court found that ". . . it would seem pointless to require the defendant to make public announcements about that which is obvious". [R., Vol. IX, p. 70]. Further, the court, in light of all of the conditions and circumstances known to Hartzell, opined

that "It is not necessary to conclude that in doing so (walking into the stadium on stairs he said were slippery and walking down stairs he knew to have ice and snow on them) he acted so unreasonably as to be contributorily negligent or that he assumed the risk of injury. It is simply a matter of judgment that under all of these attendant circumstances the failure to give a warning was not unreasonable". [R., Vol. IX, p. 70]. We agree.

▇▇▇ Regardless of the nature of the premises, the owner is not an *insurer* of the safety of an invitee. The status classification of the party injured on the premises of another, i. e., trespasser, licensee or invitee, is now, under Colorado law, not determinative of the owner's or occupant's responsibility or degree of care owing to that person, even though it may yet have some bearing on the question of liability. Rather, it is simply a factor to be considered. The applicable standard of care is that the occupant, in the management of his property, should act as a reasonable man in view of the probability or foreseeability of injury to others. *Mile High Fence Company v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971).

The court, in *Mile High Fence Company, supra,* in reference to Restatement of Torts 2d, stated in part:

> . . . the basic theme running through the Restatement is that the possessor of land is liable to a person whether *licensee* or *invitee* or even *trespasser* for his negligence if (1) he knows of the condition, (2) knows that it involves an unreasonable risk or harm to a person, and (3) fails to take reasonable precaution to correct it.
> 489 P.2d at 314.

In *Webb v. Thomas,* 133 Colo. 458, 296 P.2d 1036 (1956) suit to recover damages for personal injuries was brought against the owner-operator of a public swimming pool by an invitee patron who alleged that the owner-operator (a) had knowledge that he was about to dive into the pool at a place where diving was unsafe and dangerous and gave no warning of the fact that the water was not of sufficient depth to permit

one to safely dive therein, and (b) that the pool was operated in a negligent manner in that the owner-operator did not post signs indicating the depth of the water and failed to provide adequate lighting facilities. The Supreme Court affirmed the trial court's order granting defendant's motion for a directed verdict, holding that the operator of the pool is not an insurer of the safety of the patrons and that there was lack of evidence that the operator failed to use reasonable care and diligence in rendering the premises reasonably safe for the purpose for which it was designed. The Court favorably quoted from *Glaze v. Benson*, 205 Md. 26, 106 A.2d 124 (1954), for the rule set forth in Restatement, Second, Torts § 343, which reads as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Restatement, Second, Torts § 343A(1) states that a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. Comment e. on Subsection (1) reads in part:

In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, . . . and the dangers involved . . . he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk . . . . Reasonable care on the part of the possessor . . . does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

In *Boe v. United States*, 352 F.2d 551 (8th Cir. 1965) the plaintiff's decedent fell on icy steps leading to the post office. The custodian had worked diligently for several hours prior to the fall clearing the steps of the snow and ice, after which he sprinkled sand thereon. The appellate court affirmed these trial court findings in holding that the government was not liable in that it had exercised due care in light of the circumstances:

Residents of North Dakota . . . are wholly familiar with ice, snow, sleet and rain. Surely it may not be argued persuasively that during a period of intermittent snowing it is necessary to keep steps and sidewalks entirely free of snow and ice at all times. This is a practical impossibility.

The Government has successfully demonstrated . . . that it did or it caused to be done that which an ordinarily prudent man would have done in the same or similar circumstances. No more may be expected of the Defendant. The Government is not the guardian of the safety of every invitee in or about its premises.

*Boe v. United States*, 234 F.Supp. 942 (D.N.Dak.1964), at 944.

The situation in the case at bar does not equate with that related in *Robinson v. Belmont-Buckingham Holding Co.*, 94 Colo. 534, 31 P.2d 918 (1934). There, a tenant in an apartment building was permitted recovery of damages from the landlord-owner when she fell on the snow-covered, icy cement walk in front of the apartment unit while departing for work. The court rejected the contention that the plaintiff had assumed the risk of using the front walk because she knew of its dangerous condition. Noting that there was no other

means of exit and that plaintiff was due to report for work, the court said:

> Even if she had such knowledge, it did not make her a captive in her room; she was obliged to leave the building to go to her work.

31 P.2d at 920.

For further support of the trial court's finding that the Academy personnel employed reasonable care under all of the facts and circumstances of this case, *see* 62 A.L.R.2d, Annot. 131, et seq. (Slippery Steps —Injury); 25 A.L.R., Annot. 1273, et seq. (Landlord—Condition of Halls, Stairways, Etc.); 98 A.L.R., Annot. 557, et seq. (Duty and Liability of Owner or Keeper of Place of Amusement Respecting Injuries to Patrons); Prosser, Law of Torts, 3rd Ed., §§ 60, 61.

### II.

In view of our holding that the trial court did not err in its finding that the Government was not liable on any basis of negligence, we deem it adequate to conclude that our detailed review of the record does not leave us with the impression that the trial court was clearly erroneous in its finding that the evidence does not establish aggravation of Hartzell's pre-existing condition, thus eliminating the need of determining money damages.

We have reviewed the remaining contentions of error. We hold that they are without merit.

AFFIRMED.