JULIETTE A. EMERY vs. MINNEAPOLIS INDUSTRIAL EXPOSITION.

Argued Jan. 26, 1894.    Reversed Feb. 9, 1894.

No. 8548.

Ordinary care is the measure of duty to a license.

When a person enters upon the premises of another by invitation, either express or implied, or simply by permission,—license,—the law imposes upon the latter the duty of exercising ordinary care.

The facts were sufficient to sustain a verdict for plaintiff.

When plaintiff rested her case, it was dismissed on defendant's motion. *Held*, the facts then appearing being stated in the opinion, that the court erred in so dismissing.

Appeal by plaintiff, Juliette A. Emery, Administratrix of the estate of Walter R. Morton, deceased, from an order of the District Court of Hennepin County, *William Lochren*, J., made February 16, 1893, denying her motion for a new trial.

Action against the Minneapolis Industrial Exposition, a corporation, for negligence in so constructing and maintaining a window in its exposition building that plaintiff's intestate, Walter R. Morton, on September 5, 1891, fell out upon the pavement below and was killed. When plaintiff's evidence was all given, the court on defendant's motion dismissed the action. Plaintiff excepted, made a case containing all the evidence and moved for a new trial. Being denied she appeals.

*Freeman P. Lane* and *William H. Briggs*, for appellant, cited *Estelle* v. *Village of Lake Crystal*, 27 Minn. 243; *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289; *Mullin* v. *Northern Mill Co.*, 53 Minn. 29; *Hannem* v. *Pence*, 40 Minn. 127; *Brown* v. *Brooks*, 85 Wis. 290; *Kaillen* v. *Northwestern Bedding Co.*, 46 Minn. 187; *Stackus* v. *New York C. & H. R. R. Co.*, 79 N. Y. 464.

*A. H. Young* and *Frank M. Nye*, for respondent.

Negligence involves a legal duty from the person who is the cause of the injury to the person injured. In order to maintain an action for negligent injury, it must appear that such duty was violated by a want of ordinary care on the part of defendant. This duty, if any existed, must have grown out of some invitation extended by defendant to deceased to enter the room or place where the accident occurred. It is not enough that the deceased and his companions could enter without obstruction, nor yet that defendant permitted it to be used by men as a smoking room. It must appear that there existed conditions which in character constituted an invitation to these boys to enter the room. *Hargreaves* v. *Deacon*, 25 Mich. 1; *Evansville & T. H. R. Co.* v. *Griffin*, 100 Ind. 221; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Gillespie* v. *McGowan*, 100 Pa. St. 144; *Trask* v. *Shotwell*, 41 Minn. 66; *Zoebisch* v. *Tarbell*, 10 Allen, 385.

Applying this rule of law to the facts in this case it is clear that plaintiff has no standing. The deceased and his companions were neither directly nor by implication invited to the room where the injury was sustained. Defendant owed to deceased no legal duty. In going into the room he assumed whatever danger existed. He knew that the room constituted no part of the exhibition. He went there for the transaction of no business with defendant. There was no attraction placed there by defendant to call him into the room. He was of an age to be chargeable with whatever legal responsibility was assumed from going into the room uninvited.

It was contributory negligence on the part of deceased to go into the room uninvited and without excuse and to place himself in an exposed condition by leaning upon a half opened window without examining to ascertain how the sash was supported.

COLLINS, J.   Defendant is a corporation owning a large building in the city of Minneapolis, in which it holds public expositions annually, an admission fee being charged each visitor.   At one corner, as part of the structure, is a tower with several stories or floors, thus making a number of small rooms, one above another, through which, in the center of the tower, is an elevator, inclosed or running in a wire netting.   The floor of one of these rooms is midway between the second and third floors—20 feet apart—of the main building.   This room is not accessible by elevator, there being no door in the netting, and can only be reached by means of a stairway from the room beneath it.   In this room were large windows, one opening towards the river front, and one, called the "middle window," opening towards Central avenue, a prominent thoroughfare.   The first mentioned had been boarded up, evidently to prevent visitors to the room from gazing out upon an exhibition of a spectacular character, to be seen every evening in an inclosure on the river front close by.   The bottom of the middle window was substantially on a level with the floor, the window had but one sash, necessarily very heavy, and, upon opening, the window descended instead of ascending.   There were no weights or other appliances to hold the sash up at any particular place, and, when fully opened, the entire window dropped below the floor.   A stick was customarily used to keep the sash up, one end resting on the floor and the other under a part of the sash.   This room was used as a smoking room, and was known as such to the boys hereinafter mentioned.   It contained no exhibits, but, according to the testimony, was open to those who visited the exposition then in progress.

On the evening of September 5, 1891, plaintiff's intestate, a son, aged sixteen, his younger brother, and a lad named Egan went into the building, paying the usual admittance fee, and, after strolling about awhile, made their way up to this room.   They had been there a few days before.   It was after dark, but the room was well lighted, and a number of ladies were there, some peering out at the exhibition before mentioned through cracks between the boards which covered the river-front window.   The middle window was partly down, the top of the sash being about three and a half feet from the floor, and it was supported in this position solely by the stick already spoken of, the upper end resting, it is supposed, under the

edge of the top of the sash, against the glass, and the lower end on the floor. None of the witnesses could tell whether the stick stood nearly upright or was at quite an angle, or exactly how it was placed, for the purpose of keeping the window partly open. The plaintiff's sons stepped to the window, with the Egan boy close by. The younger of the brothers rested his arms and leaned on the top of the sash, looking out for a minute, when suddenly the stick slipped out of place, the heavy window dropped swiftly, and the boy fell forward. At this moment his brother seized him by the collar, and both fell to the pavement below, the older sustaining injuries from which he died within twenty-four hours.

This action was brought to recover damages on account of the defendant's alleged negligence in maintaining the window in the condition already described. When the plaintiff rested her case it was dismissed, upon defendant's motion, and on the ground, as we gather from remarks of the court made at the time, that defendant's negligence had not been established. Counsel for the last-named party attempt to justify the ruling of the trial court upon two propositions: First, that it appears that the room in question was one to which the deceased was not invited by defendant, either expressly or by implication, and that, at most, he was a mere licensee; second, that the evidence wholly failed to show any negligence attributable to defendant, and, further, that it conclusively established contributory negligence on the part of the plaintiff's intestate.

1. On the evidence it is clear that the boys were not trespassers when they went to this smoking room, for it was open to visitors, and had been set apart for the use of those addicted to smoking. It had been made easily accessible from a lower floor, was lighted up at night, the exposition management had found it necessary to board up one of the windows so as to prevent visitors from seeing the show close by without paying therefor, and at the time of the accident there were several ladies occupying the room, some looking out, as before stated. It is not material whether the deceased was in the room by invitation, either express or implied, or simply by the permission,—license,—of defendant corporation, for in either case the law imposed upon it the duty of exercising ordinary care. The invitation or license, express or implied, created this duty.

2. In cases involving the question of negligence it is the well-set-

tled rule, often stated by this court, that, where there is no reasonable chance for deriving different conclusions from the facts, the question is for the court, as in any other case; but, where the facts are such that fair-minded men of ordinary intelligence may differ as to the inferences to be drawn therefrom, the question of negligence is for the jury. It follows that ordinarily it is only where there is an entire absence of evidence tending to establish negligence that a court can enter upon the province of a jury, and order a nonsuit, *Bennett* v. *Syndicate Ins. Co.*, 39 Minn. 254, (39 N. W. 488;) and so where the question of contributory negligence is involved, to justify a nonsuit of the plaintiff, such negligence must appear so clearly that no construction of the evidence or inference drawn from the facts would have warranted a contrary conclusion.

Applying these rules to the facts in this case as they appeared when the plaintiff was nonsuited, we are of the opinion that the court below erred in its rulings.

Order reversed.

(Opinion published 57 N. W. Rep. 1132.)