LOUIS STUNGIS, APPELLANT, v. WAVECREST REALTY COMPANY, APPELLEE.

FILED APRIL 25, 1933. No. 28545.

*John P. Breen* and *A. Zaleski,* for appellant.

*Kennedy, Holland & De Lacy* and *George Tunison, contra.*

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ.

PAINE, J.

The plaintiff brought an action to recover damages for personal injuries sustained while using the facilities of a bathing resort owned by the defendant. At the conclusion of the plaintiff's case in chief, the court sustained a motion of defendant, and discharged the jury and dismissed the action. Errors were assigned for a new trial, and overruled by the court, bond given, and plaintiff appealed to this court.

A brief summary of the evidence will be given before attempting to determine the law relating to the subject or the soundness of the court's ruling in taking the case away from the jury.

The defendant owns and operates a bathing resort, which is a part of Carter lake, in the northeast part of Omaha. The defendant had a bathhouse on the south side of the lake, with a children's play-yard down at the edge of the water, and with a large diving float, some 32 feet by 14 feet, about 125 feet out from the shore line. On this diving float, there was a springboard at one end, with the water about six feet deep, and a high diving tower at the other end, with the water from seven to eight feet deep. About 60 feet away from this diving platform, and only 85 feet out from the shore, there was a small platform, about six feet square, and about four feet above the water, having at its rear side, towards the shore, a ladder, up which swimmers could climb to get on the platform. At the front end of this platform, and projecting outward, there was a wheel, about eight feet in diameter and about two feet broad, on which swimmers could sit down, or lie down, and when the wheel was turned it would throw them out into the water, which was about four and a half feet deep on that side.

The plaintiff, who was about 30 years of age, with his wife and Joe Uhlarik, a brother-in-law, and his wife, went out to this beach about 8 o'clock in the evening

on July 19, 1931, and paid 25 cents apiece for the use
of the facilities of the beach. The men got out into the
water first, and went out to the high diving tower, and
plaintiff, who was a good swimmer and an excellent
diver, dived off from the tower once or twice, while his
brother-in-law dived off the springboard at the other
end of the float. Later their wives came out of the bath-
house, and the men went back to the shore and walked
out with their wives, who were somewhat timid, to the
small platform, in which the large wheel was located.
Plaintiff twice climbed up the ladder at the rear of this
platform, and got on the water wheel, the flat top of
which was one foot above the platform, and laid down
on this wheel, and it rolled him out into the water, and
he swam back to the east side, where the women were
standing in water about to their armpits, but he did not
let his feet down to find out how deep the water was
on the front side of this platform. There were no signs,
telling the depth of the water around this wheel plat-
form, and the light was furnished by one flood-light from
the top of the bathhouse on the shore, as it was now
about 9 o'clock. He then mounted the ladder to the plat-
form, and said to his wife, "I will show you how to
dive," and went to the northwest corner of the platform,
held his hands straight down to his side, and made what
is called a sailor dive, going straight down, head first.
He hit the bottom and broke his neck, and recovered
consciousness in St. Catherine's hospital the next day. They
put a harness, or halter, on his neck and head, with a
weight of ten pounds, which kept a constant tension on
his neck, and then placed a plaster of Paris cast on him,
running from his hips upward, which remained on for
about eight or ten weeks, and then followed a neck-brace,
which was worn for six weeks. Plaintiff, at the time of
trial, was unable to hold his head straight, and had re-
stricted movement of the neck. According to the testi-
mony of the physician, the X-ray pictures disclose that
plaintiff has a fracture of the fifth and sixth cervical

vertebræ, with dislocation and a fracture of the posterior lateral processes. In the treatment, every effort was made to avoid any manipulation of the broken vertebræ, which might be fatal, and to hold them so that they would grow together, which they have done, making a stiff neck. There has been some formation of new bone, called ankylosis, and this gives a fairly stable union, depending upon the amount of lime salts laid down. The neck is stiff, and held in an unnatural position, and is more subject to any future injury which might occur.

1. When the plaintiff rested, the defendant moved the court that the jury be discharged and cause dismissed, or to direct the jury to return a verdict in favor of the defendant, for the reason that the evidence was not sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, and for the further reason that the evidence did not show any negligence on the part of the defendant, but affirmatively showed that the plaintiff knew the situation, and, in making the dive at the place he did, was guilty of gross negligence. This motion was argued at length by both counsel, and the court made a statement of what he thought the law to be, and indicated that he was going to sustain the defendant's motion, and asked the bailiff to bring in the jury, at which time the plaintiff attempted to dismiss his action, as follows: "The plaintiff moves, at this time, before the case is submitted to the jury, for a motion to withdraw this case from further consideration, without prejudice;" whereupon Judge Wright ruled that the court felt that he had indicated and already sustained the motion, and that the plaintiff would not be permitted to dismiss at that time, and such motion was overruled, and this action of the court is assigned as one of the errors, in that the court had not definitely and expressly announced his decision, and that the plaintiff made the motion to dismiss without prejudice before the jury were so informed. Plaintiff also assigns as error that the dismissal was not sustained by sufficient evidence, and that

the court invaded the province of the jury in deciding, as a question of law, facts which should have been submitted to the jury for determination.

Section 20-601, Comp. St. 1929, provides that any action may be dismissed without prejudice to a future action by the plaintiff before the final submission of the case to the jury, or to the court where the trial is by the court, and plaintiff insists that there was no final submission of the case to the jury at the time plaintiff moved to dismiss the case without prejudice. The bill of exceptions discloses that the plaintiff had formally rested his case at the close of the introduction of his evidence in chief, and thereupon the defendant moved the court to discharge the jury and dismiss the case, which was argued at length by both counsel. The court then indicated what his ruling would be, viz., that he would discharge the jury, and had sent the bailiff to bring in the jury. Plaintiff insists that there had been no final submission of the case to the jury, as set out under the section of the statute quoted above, and, therefore, he had the right to dismiss his case without prejudice. This is determined, not alone by the statute, but by the practice. In the case at bar, the court had listened to the arguments upon the defendant's motion to dismiss the jury, and, having decided that it was well founded, had stated to counsel that he would sustain the motion. That being the case, the merits of the controversy were not to be submitted to the jury, for, when the court announced the action it would take, the jury were, to all intents, discharged by that statement. Directing the bailiff to recall the jurors to the courtroom and there be discharged by the court was, to all intents and purposes, a mere formality, founded upon courtesy to the jurors, so that they might understand that their services in that case were at an end, for the court could as easily have instructed the bailiff to go to their room and tell them they were now discharged and need not return to the courtroom. We do not believe that the denial of the trial judge to allow the case to

be dismissed without prejudice was an abuse of his discretionary power. *Deneen v. Houghton County Street R. Co.,* 150 Mich. 235, 13 Ann. Cas. 134; 9 R. C. L. 193, sec. 4; *Bee Building Co. v. Dalton,* 68 Neb. 38, 4 Ann. Cas. 508; *Nelson v. Omaha & C. B. Street R. Co.,* 93 Neb. 154.

2. The plaintiff insists that the law is that the duty of the owner of a public bathing resort is to exercise all proper precaution to maintain every part of said place in a reasonably safe condition for use, and should exclude the public from any portion thereof that becomes unsuitable or unsafe, citing *Turlington v. Tampa Electric Co.,* 62 Fla. 398, 38 L. R. A. n. s. 72, Ann. Cas. 1913D, 1213; *Blanchette v. Union Street R. Co.,* 248 Mass. 407; Ann. 38 A. L. R. 359; *Johnson v. Hot Springs Land & Improvement Co.,* 76 Or. 333, L. R. A. 1915F, 689.

In the first case cited, the plaintiff's husband dived off the springboard into three and a half feet of water and broke his neck, and it was held that the defendant had failed to furnish a reasonably safe place for diving, and that the patron did not know the depth of the water and could not be charged with knowledge of the depth of the water.

In the second case cited above, a person used a chute and was injured by striking the bottom, the water being less than three feet deep. It is insisted by the defendant that in each of these cases the person injured was using the appliance, which in one case was the chute and in the other the springboard, for the identical purpose for which it was designed, while, in the case at bar, the plaintiff was not injured by rolling over the eight-foot wheel into the water, but was injured by using the wheel platform for a deep dive, for which purpose it was not designed.

In *Brotherton v. Manhattan Beach Improvement Co.,* 48 Neb. 563, Commissioner Irvine reversed an instructed verdict for the defendant, and held that the evidence required that the case be submitted to the jury. In this

case a boy, about 17 years of age, disappeared while swimming at Lake Manawa, and his body, lying at the bottom of the lake, was not discovered until late that night. In this case, after the company was notified that the boy was missing, it refused to make any effort to find him for some time, advising his companion to look for him in a saloon on the shore, where his companion knew that he would not be. It is clear, from a casual reading of this case, that the trial judge was in error in instructing the jury to return a verdict in favor of the defendant, for there was abundant evidence to show that the defendant should have kept someone on duty to watch the bathers, especially those in deep water.

Plaintiff also cites the case of *Lyman v. Hall,* 117 Neb. 140, in which a boy was drowned at Riverview Park, a bathing resort near Stratton, Nebraska. In this opinion a large number of cases are reviewed, and while it was stated that the record cannot be read without emotion, yet the sufficiency of the evidence to sustain the verdict must be determined independently of sentiment or pity, and it was held that the duty to exercise ordinary care to protect the patrons of a public bathing resort, conducted for private gain, does not make the proprietor an insurer of their safety. It was further held that evidence of negligence does not of itself establish a cause of action, but, in addition, the plaintiff must show that the negligence pleaded by him was the proximate cause of the alleged injury, and that the evidence, as set out in detail in the opinion, was insufficient to sustain a verdict for the plaintiff.

That an accident occurs is not conclusive proof of negligence on the part of the owners of a bathing resort. *Flora v. Bimini Water Co.,* 161 Cal. 495. Where a bather slipped upon concrete steps in entering a swimming tank, the proprietor was held not guilty of negligence, where it was shown that the steps were constructed in accordance with universal custom. *Anderson v. Seattle Park Co.,* 79 Wash. 575. One who dives into a swimming pool

which is only half full, when he can see the depth by other persons standing therein, is negligent, and the proprietor is not liable for the death, although no special warning was given. *Johnson v. Hot Springs Land & Improvement Co., supra.*

In the case at bar, the plaintiff had walked out from the shore with his wife for over 80 feet to the water-wheel platform; he knew that the depth had gradually increased from the shore to that point; his wife was standing on one side of this six-foot platform, and he could see the depth at that point. It was quite evident that the water-wheel platform was not designed for diving purposes, as the tall diving tower had just been used by him for that purpose. Plaintiff made a deep sailor dive into comparatively shallow water. It is clear that the plaintiff could not recover in this case unless he had proved the negligence of the defendant, which had not been shown. The plaintiff was bound to use all of the senses with which nature had endowed him, as well as to exercise his reasoning faculties for his own protection. His failure to do this contributed directly to his injury, and the ruling of the trial court was right, and the judgment of dismissal is

AFFIRMED.