[No. 31727.   Department Two.   September 28, 1951.]

CHARLES HARRISON GROVE, JR., *Respondent,* v.
A. D'ALLESSANDRO *et al., Appellants.*[1]

[1]Reported in 235 P. (2d) 826.

*Jack Hullin,* for appellants.

*Kennett, McCutcheon & Soderland* and *Robert C. Wells,* for respondent.

SCHWELLENBACH, C. J.—This is an appeal from a judgment for plaintiff, entered after a verdict of a jury in his favor.

Plaintiff brought this action for personal injuries sustained as a result of diving off a twenty-foot slide tower located on defendants' beach resort. It was alleged that, because of the shallowness of the water, plaintiff struck bottom and fractured his neck; that the defendants were negligent in their failure to post signs warning patrons of the resort of the depth of the water, or to otherwise protect its patrons from hidden dangers; that the defendants were further negligent in holding out said area as being safely and customarily used by its patrons. Damages in the amount of $16,560.50 were prayed for to compensate for doctors and hospital expenditures and for pain and suffering.

The jury returned a verdict in plaintiff's favor and granted an award of damages in the amount of $1,750.

During the year 1946, defendants D'Allessandro and Steiner, as partners, leased and operated a resort known as Shady Beach, located on Lake Washington, near Seattle. The resort property included two docks extending out into the lake. During that year, the dock on the easterly edge of the property (the only one involved in this controversy) was used and maintained jointly by the defendants and the owner of the property to the east of them (Juanita Beach Cabins). There was a twenty-foot opening on the shore between the two properties and the patrons of Shady Beach had free access to the dock by this opening. There was also access to the dock by means of a boat float lying just to the west of the dock. The float was flush against the west side of the dock but considerably lower, so that in going from the float to the dock it was necessary to step up

and onto the dock. The dock had a handrail on its westerly side with openings in the rail on the north and south ends of the float. Steps were provided at these openings to assist in stepping up onto the dock.

In the spring of 1947, access to the dock, from the shore, was blocked off by building a high board fence from the bathhouse to the dock which eliminated the twenty-foot opening on the shore. The openings to the dock from the boat float were blocked off by nailing boards between the rails on the dock which provided a fence of between three and four feet in height from the bottom of the dock to the top of the rail. Above the rail, three strands of barbed wire were strung, giving additional height to the fence.

Defendants testified that the reason for blockading the dock from the Shady Beach property was because there was another dock on the property, in good condition, and it was economically desirable to eliminate one from use.

The shore line runs in an easterly to westerly direction. The dividing line between the two properties runs north and south and just to the west of the dock in question. It was stipulated between the parties, however, that on the date of the accident the defendants were the lessees of the dock. The dock extends some five hundred and ninety feet into the water. At the extreme south end of the dock, a platform running east to west converts the whole dock into a sort of "T" shape. On the west side of the dock, just inside of the "T," is the tower from which plaintiff dived. A metal slide is attached to its platform. On the east side is another tower, extending out further into the lake. Defendants testified that it was intended for diving. Both towers are about twenty feet in height. Plaintiff dived from the tower to which the slide was attached. He dived, however, from the west side of the platform, rather than from the same direction as the slide. On the south side of the tower leading from the dock to the top of the tower, is a wooden stairway. Defendants testified that the first eight or ten steps were removed from the stairway in the spring of 1947 to "decommission" the tower.

Plaintiff testified that, on May 14, 1949, he, accompanied by three friends, paid his admission to the beach, parked his car in the parking area of Shady Beach, and disrobed for swimming. He received no instructions or warnings at the gate. He testified that he stepped onto the dock through what appeared to be a well defined opening in the barricade. Upon reaching the tower, he climbed to the top via the stairs, dived into shallow water and was injured. This all occurred within a period of ten minutes.

Appellants' only assignment of error is the refusal of the trial court to grant appellants' motion for a judgment n.o.v., or for a directed verdict. Appellants contend:

"1. Plaintiff was not an invitee on the dock; hence there was no duty owing to plaintiff by defendants.

2. Plaintiff was not an invitee on the tower from which he dove; hence no duty owing to plaintiff by defendants.

3. The tower was not intended as a place to dive; hence no duty to warn of shallow water.

4. The failure to post a shallow water sign was not a proximate cause of plaintiff's injury."

█ In reviewing a denial of a motion for judgment notwithstanding the verdict, it is incumbent upon us to keep in mind the well-established rule that, in such instances, the moving party admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and the evidence is to be interpreted most strongly against the defendant and in the light most favorable to the plaintiff. *Billingsley v. Rovig-Temple Co.*, 16 Wn. (2d) 202, 133 P. (2d) 265.

█ *Leek v. Tacoma Baseball Club*, 38 Wn. (2d) 362, 229 P. (2d) 329, sets forth the rule that:

"Generally speaking, the possessor of land is liable for injuries to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm."

■ An invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant is then engaged. *Deffland v. Spokane Portland Cement Co.,* 26 Wn. (2d) 891, 176 P. (2d) 311.

■ 1. Respondent was not expressly invited onto the dock. Whether or not he was impliedly invited was a question of fact to be decided by the jury. Upon disputed testimony this question was resolved in respondent's favor. He went to the resort to swim and paid the entrance fee. He testified that he had no difficulty going through the hole and onto the dock. The testimony of his companions was of the same tenor. Remembering that, under the rule quoted above as to motions for judgment n.o.v., appellants have admitted this evidence, and all inferences that can reasonably be drawn therefrom, we conclude that respondent was an invitee on the dock.

2. Having gone onto the dock, the tower was there. Respondent testified that, though there were rungs missing in the ladder, he thought nothing of it because of the general disrepair. The fact remains that he did climb the ladder to the platform. There was no railing around the platform. There was no diving board on either tower. Instruction No. 7 stated in part:

"If the facility used in this case, to-wit, a tower, was such that no reasonably prudent man would believe that it was maintained for use by the patrons of the defendants' resort, or if it was such, from all of the surrounding conditions and circumstances, that no reasonably prudent man could believe that it was intended for use for diving at all, then the plaintiff would use such facility at his own risk, and the defendants would not be responsible."

This instruction was highly favorable to appellants. Whether or not respondent was an invitee on the tower from which he dived was a question of fact for the jury to determine. That question was resolved by the jury in respondent's favor.

■ 3. What has been said in the above paragraph also disposes of appellants' third contention that there was no

duty to warn of shallow water around a slide tower, which was not intended for diving. Appellants contend, and it is true, that there is no evidence that bathers had previously dived or were accustomed to dive, off of this tower and that a resort owner does not, in the exercise of reasonable care, have to post a warning sign on every pier, waterwheel, slide, or other juncture off of which someone might jump. But we believe that, from the nature of the surroundings, the purpose of the resort, and the accompanying circumstances, the tower was, in itself, an open invitation to bathers to dive from it, and if there was any evidence negating this, it was appellants' duty to bring it forth during the trial of the case.

The cases of *Pinehurst Co. v. Phelps,* 163 Md. 68, 160 Atl. 736, and *Stungis v. Wavecrest Realty,* 124 Neb. 769, 248 N. W. 78, are cited by appellants as authority for the proposition that one who uses an implement, or facility, in a manner, or for a use, other than that for which it was designed, does so at his peril. These cases are not authority for that proposition. In any event, they are distinguishable from the case at bar due to the fact that there, recovery was denied mainly on the ground that the plaintiffs were acquainted with the depth of the water from previous visits to the premises.

4. Appellants next contend that the failure to post a shallow water sign was not a proximate cause of respondent's injury. Defendants' Exhibit 28 is a picture of the tower from which respondent dived. The picture was taken May 20, 1949, six days after the accident. It shows a sign attached to the tower, which reads:

"BE CAREFUL
Persons Using This
Dock and
Equipment
Do So at Their
OWN RISK"

Appellant Steiner testified that the sign had been put up by Mr. Forbes, the man from whom they leased the property, and that it had been there continuously from the time

they leased the property until after the accident. Respondent, on the other hand, testified under cross-examination concerning Exhibit 28:

"Q. And do you remember seeing that sign that is shown on the picture there? A. No, sir. Q. Pardon? A. No, sir. That sign was not there at the time. I couldn't possibly have missed seeing it."

■ There was presented to the jury a conflict of testimony as to whether or not the sign was there at the time of the accident. Appellants rely upon our recent decision in *Watson v. Northern Pacific Railroad Co.*, 37 Wn. (2d) 374, 223 P. (2d) 1057, where we said:

"When the respondent, by its flagman, took appropriate measures to warn travelers on the highway, it discharged its duty of care toward them. *Tonning v. Northern Pac. R. Co.*, 180 Wash. 374, 39 P. (2d) 1002. We are concerned, in such cases, with the adequacy of the warning given, not with whether a traveler on the highway was aware of the warning. He ought to be aware of an adequate warning. We have repeatedly said that one cannot be heard to say that he did not see that which, without dispute in the evidence, was there to be seen had he looked. *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784."

The distinction between that case and this is that here, there was a dispute in the evidence as to the existence of the sign at the time of the accident.

■ Keeping in mind that appellants' only assignment of error is the refusal of the trial court to grant their motion for judgment n.o.v. and that, in such a situation, we are required to interpret the evidence most strongly against appellants and most favorably to respondent, we are of the opinion that the trial court did not commit error in denying appellant's motion.

The judgment is affirmed.

MALLERY, GRADY, HAMLEY, and WEAVER, JJ., concur.