## No. 17,756.

ROBERT LEE WEBB *v.* LEONARD THOMAS.
(296 P. [2d] 1036)

Decided May 7, 1956.

Mr. HARRY F. CLAUSSEN, for plaintiff in error.

Messrs. COIT & GRAHAM, Messrs. STEWART & GAL-
LAGHER, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE ALTER delivered the opinion of the
Court.

ROBERT LEE WEBB brought an action against Leonard
Thomas to recover damages in the sum of $288,700 for
injuries resulting from an accident incurred while a
patron in defendant's swimming pool. The cause was
tried to a jury, and at the conclusion of all of the evi-
dence the court directed a verdict in favor of defendant,
and judgment thereon was ordered. Plaintiff is here by
writ of error seeking a reversal of the judgment.

Plaintiff and defendant will herein be designated as
they appeared in the trial court.

In the complaint it is alleged that defendant operated
a public swimming pool in Aspen, Colorado, and that on
July 5, 1953, plaintiff paid an admission fee for the privi-
lege of swimming therein. It is further alleged that de-
fendant had knowledge that plaintiff was about to dive
into the pool at a place where diving was unsafe and
dangerous and gave no warning of the fact that the
water was not of sufficient depth to permit one to dive
safely therein. Further, that the swimming pool was
maintained and operated in a negligent and careless
manner in that defendant failed to post signs indicating
the depth of the water in the pool and failed to provide
adequate lighting facilities. Plaintiff was seriously and
permanently injured as a result of a dive in the shallow
portion of the swimming pool, and, as a result of in-
juries thus received, prays judgment in the sum of $288,-
700, interest and costs.

Defendant's answer contains five separate defenses,

the first consisting of admissions and denials; the second and third raise the questions of contributory negligence; the fourth is assumption of risk, and the fifth is the failure of the complaint to state facts to constitute a cause of action.

At the conclusion of plaintiff's evidence in chief, defendant interposed a motion for directed verdict based on the ground that plaintiff had failed to sustain the burden of proving negligence on defendant's part, and, further, that plaintiff's evidence established that he was guilty of contributory negligence, which was the proximate cause of his injuries. This motion was denied. At the conclusion of all of the evidence, defendant renewed his motion, adding thereto that plaintiff's evidence established negligence on his part as the cause of the accident and that the evidence established plaintiff's contributory negligence as a matter of law and plaintiff's assumption of risk. This motion was granted.

The undisputed testimony is that the accident occurred on July 5, 1953, at 10 o'clock P. M. The pool in which it occurred was fifty feet in length, in a northerly-southerly direction, and twenty-five feet in width. In the northerly end the water was three and a half feet deep, and it sloped gradually to the southerly end where the water was eight and a half feet deep. It was rectangular in shape an was painted white. There were no signs around the pool indicating the depth of the water at any particular point. It had two 500 watt lights about two and a half feet below the water level therein which completely illuminated it, and there were two spotlights at each end of the pool. In addition five other lights were in the immediate area. At the time of the accident the water in the pool was clear. The only diving board was at the south end of the pool where the water was eight and a half feet deep.

The pool was constructed in the early part of 1953 on plans and specifications purchased by defendant from the Paddock Pool Company in Los Angeles, California,

a large and well known swimming pool company which had built many standard swimming pools. Defendant had gone to Los Angeles for the purpose of acquainting himself with pools constructed by this company in that area. Between the opening of the pool in early 1953 and July 5, 1953, when the accident occurred, approximately 3500 persons had used it, and prior to the trial, which began on the 20th day of May, 1955, 12,000 to 15,000 persons had used it, and there had been no injuries other than inconsequential scratches or abrasions not attributable to the construction of the pool.

On the evening of July 5, 1953, plaintiff had attended a gathering where dinner and drinks were served, and during the evening, and prior to going to the swimming pool, he testified that he had had two or three martinis. Immediately prior to going to the swimming pool with a companion he had a drink of whiskey from a bottle which he carried in his automobile. At about 10 o'clock P.M. plaintiff having paid his admission fee and changed into his swimming trunks, dove into the north end of the pool. He had never swam in the pool prior to that time. His first dive was made without difficulty, after which he testified that he swam toward the southerly end of the pool and emerged by use of a ladder. He walked around the pool, returning to the north end thereof, and having discovered that his companion was not yet ready to enter the pool, made a "sailors dive," struck his head on the bottom at a point where the water was three and a half feet in depth, resulting in his injuries.

Plaintiff was thirty years old at the time of the trial and a patient in the Veterans Hospital at Long Beach, California. It is undisputed that as a result of the injuries received in the swimming pool on July 5, 1953, he is helplessly and permanently disabled for life.

The following quoted portions of plaintiff's testimony disclose the precautions, investigations, and the acts in and about the swimming pool just prior to his injuries:

"Q. What sort of dive did you make the first time you dived into the pool? "A. Just a regular flop; the kind of dive I make. * * * "Q. You testified that you could not see the bottom of the pool, is that correct? "A. Not clearly. "Q. Did you look for the bottom of the pool? "A. I looked into the water. "Q. Did you look in an attempt to ascertain where the bottom was? "A. I know where the bottom was. I looked and it looked all right to me. It didn't impress me as being bad or unbad. "Q. You said you couldn't see it [the bottom]. What did you mean by that? "A. I meant I couldn't see it clearly. "Q. Did you make any effort to ascertain the depth of the pool at the point where you dived in? "A. Other than observing that it looked all right, no. "Q. Did you make any effort to ascertain where the diving board was? "A. No.

* * *

"Q. Do you know now where the diving board at that pool is, or was? "A. I am not sure.

* * *

"Q. Did you make any effort prior to the second dive to ascertain the depth of the pool at that point where you made the dive? "A. I had made the first dive and had no trouble and came around and assumed there were no dangers involved. "Q. Did you make any effort before you dived into this pool to ascertain which was the shallow end? "A. When I looked at the water and looked at the pool it looked safe to me. I couldn't distinctly see a shallow bottom or anything and I naturally assumed it was safe. "Q. I asked you whether you made any effort to ascertain which was the shallow end and which was the deep end. Can you answer that question? * * * "A. I say it looked deep enough to me, shallow or deep. * * * "Q. Then you did not make any effort, is that right? "A. No distinct and separate effort to check, no. "Q. And you dived in without attempting to determine whether you were diving in the shallow end or the deep end, is that right? "A. What I am trying to

say is I didn't make a definite comparison, whether this was the shallow end or the other was the shallow end. I just dove into the pool. It looked safe and there were no signs or anything to indicate that it wasn't. "Q. Did you specifically look for any signs? "A. I looked around and saw none. I didn't specifically look for a particular sign, no.

\* \* \*

"Q. Did you attempt in any other way to determine whether it was safe to dive at that end of the pool? "A. I would say I assumed it was safe from the general appearance and that was my investigation of it. "Q. I asked you if you made any effort to determine whether it was safe. Can you answer that question? \* \* \* "A. Other than the general observations, no, sir."

Plaintiff's summary of argument may be thus stated: The evidence established: 1. That the accident and injuries were caused by the negligent actions and omissions of the defendant. 2. Error was committed by the court in granting defendant's motion for a directed verdict at the conclusion of all of the evidence after having denied said motion at the conclusion of the plaintiff's evidence. These will be discussed in the order named.

█ Under factual situations almost identical to those in the instant case, it has been uniformly held that defendant is not an insurer of the safety of the plaintiff. *Perkins v. Byrnes, et al.,* 364 Mo. 849, 269 S.W. (2d) 52; *Johnson v. Hot Springs Land and Improvement Co.,* 76 Ore. 333, 148 Pac. 1137; *Englehardt v. Phillips,* 136 Ohio St. 73, 23 N.E. (2d) 829; *Hill v. Merrick,* 147 Ore. 244, 31 P. (2d) 663; *DesIseles v. Evans, etc.,* 225 F. (2d) 235; 38 Am. Jur., sec. 96, p. 756; 52 Am. Jur. sec. 71, p. 315; 4 Shearman & Redfield on Negligence (Rev. ed.) sec. 644, p. 1562.

While the proprietor of premises is not an insurer, nevertheless it is his duty to use reasonable care and be diligent in furnishing and maintaining the premises in

a reasonably safe condition *for the purpose for which it is designed and to which it is adapted.* It is the duty of the proprietor to keep the premises in a reasonably safe and suitable condition for the purpose for which *they are ordinarily used in a customary way.* 52 Am. Jur., sec. 46, p. 290; 86 C.J.S., sec. 41 (b) p. 720; *Englehardt v. Phillips, supra; Johnson v. Hot Springs Land and Improvement Co., supra; Grove v. D'Allessandro,* et al, 39 Wash. (2d) 421, 235 P. (2d) 826.

■ While it was the duty of defendant to keep his premises in a reasonably safe condition for plaintiff's use, nevertheless he is not chargeable with negligence for failure to foresee a possible injury rather than a probable one. In order to attach liability on the defendant under the factual situation here, the injuries which plaintiff suffered must be such as in the light of all the circumstances could have been reasonably anticipated by a careful and prudent defendant, and not for injuries which, although possible, were not so highly probable as to be apparent to an ordinarily prudent man. 38 Am. Jur., sec. 57, p. 705, sec. 61, p. 712, sec. 62, p. 713.

It must be obvious that even admitted that defendant was negligent in the construction and operation of the swimming pool, nevertheless there is no liability for plaintiff's injuries unless this negligence was the proximate cause.

"In accordance with the general test of proximate cause above set forth the law does not charge a person with all the possible consequences of his negligent act. He is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. It has been said that the natural and probable consequences are those which human foresight can anticipate because they happen so frequently that they may be expected to happen again, and that the possible consequences are those which happen so infrequently that they are not expected to happen again. Neg-

ligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, although possible, were wholly improbable. * * *" 38 Am. Jur., sec. 61, p. 712.

See also: *Shideler v. Habiger,* 172 Kan. 718, 243 P. (2d) 211; 38 Am. Jur., sec. 97, p. 757; 86 C.J.S., sec. 42 (2) p. 730.

In *Glaze v. Benson,* 205 Md. 26, 106 Atl. (2d) 124, we find the following which we believe to be particularly applicable to the instant case:

"* * * The applicable law is clear. A possessor of land is liable for harm caused to invitees by a condition of which he is aware, or which in the exercise of due care, should have been aware, and which (a) he should realize involves an unreasonable risk to them; and (b) he has no reason to believe that they will discover or realize the risk involved, unless he exercises reasonable care, either to make the condition reasonably safe or to give a warning adequate to enable the invitees to avoid the harm. Restatement, Torts, sec. 343; Yaniger v. Calvert Bldg. & Construction Co., 183 Md. 285, 37 A. 2d 263, 265. There the Court said, referring to the rule of the Restatement: '* * * It is to be noted that the comparative knowledge of the parties is the test of liability,—that is to say, the knowledge of the defendant as opposed to the knowledge of the person injured.' Two conditions must concur, if the possessor of the land is to be held liable: (1) a realization that the condition constitutes an unreasonable risk to the patron; and (2d) the absence of reason to believe that the condition will be discovered by the patron or the risk realized by him. As to the first of these tests, the evidence shows that the appellee had set apart at one place a shallow area for safe bathing, and at another point, a deep area for diving and swimming. * * *"

In the instant case the evidence is undisputed and conclusive that defendant, prior to the construction

of his swimming pool, spent time and money to interview a large and well known company engaged in the construction and installation of swimming pools, and, further that he made visits to numerous swimming pools for the purpose of observing their construction. After having done so, he purchased plans from the company engaged in the construction and installation of swimming pools and constructed the pool here in question in exact compliance with the plans and specifications furnished him. The uncontradicted evidence also discloses that prior to the accident in which plaintiff was involved more than 3500 persons had enjoyed the facilities of defendant's swimming pool without an injury to any of them resulting from either improper construction or maintenance of the pool, and at the time of the trial that number had increased to between 12,000 and 15,000, all who had safely used the swimming pool and without injuries resulting from improper construction or maintenance. The point in the swimming pool at which plaintiff's injuries occurred was three and a half feet deep; the water was clear; the pool and the area surrounding it well lighted. It was established by uncontradicted evidence that no diving facilities were provided in the pool except the diving board at the southerly end of the pool, a distance of not to exceed fifty feet from the place where plaintiff's injuries were incurred. This was indicative of the fact that at the southerly end of the pool diving could safely be indulged in and negatived the use of the pool for diving elsewhere.

The undisputed evidence in the instant case conclusively establishes that defendant was not negligent in the maintenance of his swimming pool, and no liability attaches to him for damages resulting from injuries received by plaintiff while a patron. Having reached this conclusion, it is unnecessary to discuss or determine the question of plaintiff's alleged contributory negligence.

The judgment is affirmed.