RICHARD HANSON, A MINOR, BY HAZEL M. HANSON, HIS MOTHER AND NATURAL GUARDIAN, AND ANOTHER v. C. J. CHRISTENSEN, d.b.a. THE HARBOR RESORT.

145 N. W. (2d) 868.

October 28, 1966—Nos. 40,101, 40,173.

*Strong, Tully & Bush* and *Wellington Tully,* for appellant.
*B. M. Harroun* and *W. R. Poseley,* for respondents.

NELSON, JUSTICE.

The present appeal involves an action for damages due to personal injuries brought by Hazel M. Hanson as mother and natural guardian of Richard Hanson, a minor, and as special administratrix of the estate of the minor's father, Arthur Hanson, deceased, against C. J. Christensen, d.b.a. The Harbor Resort. At a first trial of this action, the trial court at the close of plaintiffs' case directed a verdict for defendant. Subsequently the trial court granted plaintiffs' motion for a new trial. At the

second trial, the jury returned separate verdicts in favor of Richard Hanson in the sum of $30,000, and of Hazel M. Hanson in the sum of $10,000. Defendant appeals from an order of the trial court denying his motion for judgment notwithstanding the verdicts or in the alternative for a new trial and from the judgments entered, seeking a reversal and entry of judgments in his favor or a new trial.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear as follows:

On September 5, 1960, plaintiff Richard Hanson, then 13 years old, together with his family went for a Labor Day picnic and some swimming to the "Harbor Resort" located on the northeast end of Prior Lake in Glendale Township, Scott County, Minnesota. Defendant, C. J. Christensen, a man then 68 years of age, acquired in 1946 a 17-acre tract of land having between 300 and 400 feet of lake shore where he operated the Harbor Resort as picnic grounds furnished with about 100 picnic tables and a refreshment stand for the sale of pop, ice cream, and candies.

The lake shore had a natural sandy beach and in 1960 the Burnsville School District leased from defendant swimming accommodations for the school's summer recreation program which involved approximately 150 boys and girls. Robert Pates, head of the physical education department of the Burnsville School District, was in charge of the swimming program and informed defendant of certain requirements of the school pertaining to the facilities. These included furnishing a rope to mark out a shallow portion for nonswimmers and providing a floating dock to teach diving. Thus in the early summer of 1960, 2 stationary docks, each less than 3 feet wide, 70 to 80 feet apart and supported by cedar posts were extended from the shore 32 feet out into the lake. In completing this arrangement a rope with floats was stretched across the water at the end of the 2 docks In the middle of the area and about 45 feet out from the lake shore, in 15 or more feet of water, defendant installed a floating platform complete with a diving board.

The water at the end of the stationary docks on the day in question was approximately 2½ feet deep and appeared dirty and green. There were no signs on the premises pertaining to the use of the lake for swimming, the use of the docks, floats, or diving board, nor were there any signs pro-

hibiting swimming to picnic patrons. The defendant's charge for the use of the picnic area was $1 per car irrespective of the number of occupants.

Defendant was fully aware that people using his picnic area also frequented the lake shore and made use of the stationary docks and the floating dock with its diving board. Apparently no efforts were made by defendant to prohibit the use of the sandy beach or to stop the swimming and diving activities of those admitted upon paying the fee.

At about 11 a. m. on September 5, 1960, plaintiff, his brother, Brian, and sister, Barbara, waded into the water from the shore and swam to the floating dock. They dove from the floating dock in all directions, using the diving board and platform for about an hour before returning to the beach for lunch. All testified that while diving they had experienced no difficulties and had never touched the bottom of the lake. The Hanson family stayed around their picnic table for about an hour after completing their lunch. Then Richard, discovering that his brother and sister had returned to the diving platform, ran down to the end of the stationary dock to the west, and dove into the lake at that point. The next thing Richard remembered was seeing bubbles and then being carried to the beach. Although the medical testimony has not been fully included in the record, it appears that plaintiff suffered a broken neck in his attempted dive.

The action brought by Hazel M. Hanson is limited to a claim for injuries which a parent may have for damages due to the expenditure for medical supplies and medical, hospital, and nursing services, together with the loss of services of the child to the parent, present and future, as applicable in cases of this nature. The trial court properly instructed the jury on this issue and made it clear to them that in the event the plaintiff minor is not entitled to recover, then his mother would not be entitled to recover on her claim.

The defendant contends that there was insufficient evidence to find defendant negligent and that plaintiff should have been found contributorily negligent as a matter of law. Defendant further contends that the testimony of Robert Pates, athletic director and swimming coach at the Burnsville School, relating to general rules of water safety should have been admitted. The questions involved are:

(1) Whether the trial court erred in submitting the question of the defendant's negligence to the jury,

(2) whether there was evidence from which the jury could properly find that the plaintiff, Richard Hanson, was not guilty of contributory negligence as a bar to his recovery,

(3) whether the trial court erred in refusing to permit the witness, Robert Pates, to testify as to general rules of diving as they pertain to depth of water, and

(4) whether the trial court erred in denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

■ It is undisputed that the beach and swimming facilities were designed for both swimming and diving. To this end the facilities attracted resort patrons including adults and children. We think it clear under the rules of law applicable to public resorts in this state that while defendant was not an insurer of the safety of plaintiff, he was nevertheless furnishing and maintaining his swimming and diving facilities in a manner for which they were apparently designed and to which they had been adapted, including their use by resort patrons, and had a duty to exercise reasonable care. While the standard of reasonable care remains the same, nevertheless, what constitutes its exercise necessarily varies with the situation, conditions, and attending circumstances in a given case.

■ There is, of course, a reciprocal duty upon the part of a patron of a recreation area. It has been held that a patron of a public swimming pool operated for a profit has a right to rely upon the assumption that the proprietor has discharged his duty and provided a place that is reasonably safe for the use intended. As a patron he is not required to made a critical inspection to insure himself that it is safe. He has, however, the duty to exercise ordinary care to avoid known or appreciated dangers and also has the duty to discover conditions of danger which a prudent person, of his age and experience if a minor, in the exercise of ordinary care under the attending circumstances might reasonably discover. There is little if any question as to whether plaintiff could have known that the water at the place he dived from was only 2½ feet deep. While he ad-

mittedly knew of the danger of diving in 2½ feet of water, he was unaware of the consequences of diving in the dock area due to the unclear condition of the water.

In Vukas v. Quivira, Inc. 166 Kan. 439, 201 P. (2d) 685, where the facts are quite similar to those in the case at bar, there was conflicting testimony about how familiar plaintiff was with an area and a walk extending over it which he dived from into the lake. The Kansas court concerning the feature of the lake said (166 Kan. 443, 201 P. [2d] 688):

"* * * That was a question for the jury. There was also some evidence that moss in the water there by the walk concealed or made it difficult for one not entirely familiar with the lake to tell how deep it was. Defendant is charged with that knowledge. Under all the circumstances, we cannot hold as a matter of law that in maintaining this walk over a considerable part of the lake without warning signs as to the shallowness, the defendant furnished a reasonably safe place for plaintiff. *A reasonable conclusion from the fact that the walk was there would be that it was an invitation to plaintiff to dive from it.*" (Italics supplied.)

■ The precise issue thus presented is whether it can be said under all the attending circumstances that plaintiff was as a matter of law negligent in not discovering the dangerous condition, that is, the depth of the water. The defendant has the duty, as the owner and occupier, to acquaint himself with and to have knowledge of the condition of his premises, thereby being able to warn his invitees or patrons of any dangers known to him which are not open and obvious. This duty he owes to all his patrons.

■ While our attention has not been called to any Minnesota cases dealing with swimming and diving, the applicable law determining the defendant's duty to his resort invitees as an owner and occupier of the premises has been enunciated many times by this court. In Lindgren v. Voge, 260 Minn. 262, 109 N. W. (2d) 754, 88 A. L. R. (2d) 1080, plaintiff was a patron of a public place of entertainment and amusement when injured and we held that the proprietor must exercise a high degree of care for the safety of his patrons; that the standard of care is reasonable care, meaning care commensurate with the risks involved; and that the law requires of owners of paid amusement places care and active vigi-

lance in protecting their patrons against perils. We cited the rule set forth in 13B Dunnell, Dig. (3 ed.) § 6988, as applicable to the facts of that case:

"Persons who maintain places of public amusement, such as theaters, shows and exhibitions, must exercise a high degree of care for the safety of their patrons. As to stairways, platforms, walks and other structures their duty resembles that of common carriers. The standard of care is reasonable care, but reasonable care in this connection calls for a high degree of care—a care commensurate with the risks involved."

See, Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L. R. A. (N.S.) 606, Ann. Cas. 1914D, 922, and Poppleston v. Pantages Minneapolis Theatre Co. 175 Minn. 153, 155, 220 N. W. 418, where this court said:

"The law requires of the owners of paid public amusement places care and active vigilance in protecting their patrons against perils."

If the owner fails in this, and such failure is the proximate cause of injury to one lawfully on the premises, compensatory damages may be recovered if the one injured is not at fault.

While we do not mean to imply that they are insurers of safety of their patrons, we do maintain that where the owner and occupier of a place of amusement, such as a resort, induces people to come upon his premises, reasonable care requires a higher degree of diligence than it does when applied to a store, bank, or such like places of business. Thus, in operating his place of amusement, he assumes an obligation to see to it that such premises are in a reasonably safe condition, in order that a person there by his invitation shall not be injured in their use if such use is in compliance with the purpose for which the invitation was extended. See, J. G. Christopher Co. v. Russell, 63 Fla. 191, 58 So. 45, and Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A. L. R. 840, both cited with approval in Lindgren v. Voge, *supra.* We think the foregoing rules approved in the Russell and Norris cases are in harmony with the holdings of this court in regard to the duty of care imposed upon the proprietor of a place of public amusement.

In Scott v. University Athletic Assn. 152 Mich. 684, 688, 116 N. W.

624, 625, 17 L. R. A. (N.S.) 234, 236, 125 A. S. R. 423, 426, 15 Ann. Cas. 515, 516, involving the collapse of a bleacher at a football game, the court said:

"* * * The managers of the grounds and stands occupied upon the occasion in question the position of proprietors of a public resort."

In that case neither plaintiff nor the public generally would be expected to examine the stand and judge of its safety. This consideration, and the probable consequence of failure of the structure, imposed upon the responsible and profiting persons the duty of exercising a high degree of care to prevent disaster. See Restatement, Torts (2d) § 343, which provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

The common-law test of duty is the probability or foreseeability of injury to the plaintiff. Chief Judge Cardozo in Palsgraf v. Long Island R. Co. 248 N. Y. 339, 344, 162 N. E. 99, 100, 59 A. L. R. 1253, 1256, expressed it this way:

"* * * The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."

For the risk of injury to be within the range of apprehension of the defendant, it is not necessary that the defendant should have had notice of the particular method in which an accident would occur if the possibility of the accident was clear to the person of ordinary prudence.

■ This court has recently indicated the scope of duty of one who holds out his property for use of the public. In Connolly v. The Nicollet

Hotel, 254 Minn. 373, 95 N. W. (2d) 657, 74 A. L. R. (2d) 1227, this court held that one who assembles a large number of people upon his premises for the purpose of financial gain assumes responsibility for using reasonable care to protect them from injury from causes reasonably to be anticipated. Whether the precautions taken are sufficient is ordinarily a question for the jury to determine. Under such circumstances the law does not require every fact and circumstance which make up a case of negligence to be proved by direct and positive evidence or by the testimony of eyewitnesses; circumstantial evidence alone may authorize a finding of negligence. Where the evidence of such facts and circumstances takes the case out of the realm of conjecture and into the field of legitimate inference from established facts, a prima facie case is made. The jury may not be denied the right to made reasonable inferences. Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407; Nicol v. Geitler, 188 Minn. 69, 247 N. W. 8; Emery v. Minneapolis Industrial Exposition, 56 Minn. 460, 57 N. W. 1132.

Where a proprietor invites people upon his premises and receives compensation for the privilege of their entrance or for their entertainment, he impliedly undertakes that, except as to the presence of something not connected with the operation of the business, the premises at the time such invitation is acted upon are reasonably safe for the purposes intended, save only as to those defects which are unseen, unknown, and undiscoverable by the exercise of reasonable skill and diligence, or by any reasonable means of inquiry or examination. Stephens v. Akron Palace Theater Corp. 53 Ohio App. 434, 5 N. E. (2d) 499.

■ The rule therefore seems well established that the duty of inspection and knowledge of any observable condition of a facility furnished by the proprietor for the use of the paying public rests upon the proprietor himself and not upon the patron or invitee. Lindgren v. Voge, *supra*. This duty is not merely passive. It is an active obligation to guard against the very risk which the evidence shows might reasonably have been anticipated. The duty of the defendant is therefore a continuing duty, which applies not only in the original installation of the equipment or the building of the facility, but continues throughout the entire time of the use of the premises. Lindgren v. Voge, *supra*.

In the cases dealing with injuries sustained by swimming-pool or bathing-resort patrons as a result of diving into water which was too shallow for safe diving, the courts have reached various results in determining whether the owner or operator was negligent. See Annotation, 48 A. L. R. (2d) 104, set forth following the case of Perkins v. Byrnes, 364 Mo. 849, 269 S. W. (2d) 52, 48 A. L. R. (2d) 97, which involved a drowning in a resort area, the claim being that the operators of the resort had taken no precautions whatever for safety of their patrons. The Missouri Supreme Court held that the trial court had erred in declaring as a matter of law that there was no evidence of negligence or that plaintiff was guilty of contributory negligence. Both questions were for the jury.

The defendant in the instant case relies to some extent on Webb v. Thomas, 133 Colo. 458, 296 P. (2d) 1036, where the plaintiff dove into shallow water in a swimming pool, receiving injuries. In that case a directed verdict for defendant was upheld. The facts in the Webb case are certainly distinguishable from the case at bar. The defendant here admits that the determination of whether negligence exists must depend on whether the particular circumstances give rise to a duty which has not been performed and that it is apparent that each case must be decided on the particular facts involved. The defense calls attention to two Minnesota cases involving trespassing children, namely, Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563, and Hocking v. Duluth, M. & I. R. Ry. Co. 263 Minn. 483, 117 N. W. (2d) 304. Those cases as we see it are in no manner controlling as to resort operators, or operators of places of amusement, including beach, swimming, and diving facilities, where the presence of patrons is solicited and a fee charged upon entrance. With respect to the charge of contributory negligence on the part of a minor plaintiff, the applicable rule of law is stated in 13B Dunnell, Dig. (3 ed.) § 7029, as follows:

"* * * But where a child has attained such an age as to be capable of exercising his judgment and discretion, he is responsible for the exercise of such a degree of care and vigilance as might reasonably be expected of one of his age and mental capacity. * * * While a child is not held to the same degree of vigilance that is required of an adult to constitute ordinary

care, he is bound to exercise the degree of vigilance that an ordinarily prudent boy of his age, mental capacity, and intelligence is capable of using."

In the absence of any signs or warnings, the issue of whether plaintiff was contributorily negligent is for the jury. These docks and swimming facilities had been built for children and adults and yet there were no warning signs as to depth despite the proximity of these docks to the picnic area and the condition of the water. Furthermore, no railings were provided on the docks for the protection of swimming patrons nor were lifeguards provided to patrol the swimming and diving areas.

Defendant, however, contends that in order for the plaintiff to recover, he must prove that defendant's negligence was the proximate cause of his injuries. Defendant emphasizes that plaintiff's dive was voluntary and that there is no claim defendant was negligent in not maintaining the water at a greater depth. Obviously plaintiff would not have been hurt if he had not dived into the shallow water, but may not the cause of his diving have been due to defendant's acts and omissions in failing to provide that high degree of care as required under the particular circumstances?

In Vukas v. Quivira, Inc. *supra,* defendant owned and operated a club-house and bathing beach where plaintiff was admitted. While diving from a platform he struck the bottom of the lake and was injured. Plaintiff alleged that the negligence of the defendant had caused his injuries and that such negligence consisted in maintaining the platform without a railing and failing to provide signs and give warnings against diving into the shallow water. The defendant contended the injuries were caused by plaintiff's own negligence in failing to observe signs and rules posted, diving in prohibited zones, and failing to exercise ordinary care where he should have known the water was shallow. The issues of negligence and contributory negligence were submitted to the jury, which returned a verdict for the plaintiff. On appeal the Kansas Supreme Court affirmed.

In the case of Boll v. Spring Lake Park, Inc. (Mo.) 358 S. W. (2d) 859, defendant operated a recreation area where plaintiff and a friend were admitted. They proceeded to go swimming in a pool where the water was similar to a muddy lake, precluding observance of the bottom.

Alone in the pool at the time, plaintiff, an experienced swimmer, received no oral warnings as to the water's depth and saw no depth markings. He dove straight down into 3 feet of water, striking the bottom of the pool with his head and breaking his neck. The court held that a patron of a public swimming pool operated for profit has the right to assume the proprietor has discharged his duty and provided a reasonably safe place for the intended use, and that a patron is not required to make a critical inspection to assure himself that it is safe. The court emphasized that plaintiff did not voluntarily expose himself to the risk of injury from a known dangerous condition nor would a casual observation by plaintiff have revealed the dangerous condition. The court necessarily concluded that whether plaintiff was contributorily negligent was a jury question. Upon appeal judgment entered in plaintiff's favor was affirmed.

Other cases cited by plaintiffs in support of their claim that they are entitled to an affirmance are: Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. (2d) 892; Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Brightwell v. Beem (Fla.) 90 So. (2d) 320; Grove v. D'Allessandro, 39 Wash. (2d) 421, 235 P. (2d) 826; Lake Brady Co. v. Krutel, 123 Ohio St. 570, 176 N. E. 226; Turlington v. Tampa Elec. Co. 62 Fla. 398, 56 So. 696, 38 L. R. A. (N.S.) 72; Louisville Water Co. v. Bowers, 251 Ky. 71, 64 S. W. (2d) 444.

Defendant admits that Minnesota has adopted the rules of the Restatement, Torts (2d) § 343, with respect to situations similar to that in the case at bar. He contends, however, that the statement found in Meagher v. Hirt, 232 Minn. 336, 340, 45 N. W. (2d) 563, 565, applies to the facts in the instant case and that "[h]e can only be held liable for negligence if there was a foreseeable risk of injury to children under the circumstances." In Dellwo v. Pearson, 259 Minn. 452, 107 N. W. (2d) 859, 97 A. L. R. (2d) 866, the matter of foreseeability in negligence cases was reconsidered. The court quoted the following from the rule of Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, as follows:

"What a man may reasonably anticipate is important, and may be decisive, in determining whether an act is negligent, but is not at all

decisive in determining whether that act is the proximate cause of an injury which ensues. If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; but, if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not."

This court said (259 Minn. 455, 107 N. W. [2d] 861): "We are unable now to make any better statement on this issue than that of Mr. Justice Mitchell many years ago." The court thus adhered to and reaffirmed the rule of Christianson v. Chicago, St. P. M. & O. Ry. Co. *supra,* that foreseeability is not a test of proximate cause.

■ The defendant contends that the trial court erred in refusing to permit Robert Pates to testify to the general rules of diving as they pertain to depth of water. On cross-examination plaintiff testified as to whether he knew it was safe to dive into water not knowing the depth:

"Q. Well, in September of 1960, you knew at that time that it was dangerous to dive into something that was not deep, didn't you?

"A. Yes.

"Q. And you knew it was dangerous to dive into something where you did not know the depth?

"A. Yes.

"Q. Did you know the depth of the water off the end of the dock that you dove off of when you ran in September 5, 1960?

"A. No, I didn't know the depth.

\* \* \* \* \*

"Q. Is it true that as of today you do not know how deep the water was at the end of the dock where you dove off?

"A. Yes.

"Q. And you knew September 5, 1960, that it was dangerous to dive into water where you did not know the depth?

"A. Yes, sir."

Since plaintiff admitted he knew it was dangerous to dive into water

where he did not know the depth, any attempt to have Mr. Pates as an expert testify on that issue was immaterial, irrelevant, and repetitious. The matter was simply stated by plaintiff and the jury was fully advised by his testimony.

The subject matter of inquiry did not lie outside the range of common knowledge. Under the circumstances the determination of whether expert evidence applies to the subject matter resides in the sound discretion of the trial court. See, Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629. The court did not err in refusing to permit the witness Pates to testify under the circumstances presented.

■ The trial court fairly charged the jury on the issues involved and neither counsel made any corrections or additions. Under the circumstances, the issues of negligence and contributory negligence were for the jury. The trial court refused to disturb the jury verdicts and it is our view that the jury findings are sustained by the evidence.

Affirmed.

OTIS, JUSTICE (dissenting).

In my opinion, the trial court was correct when it initially directed verdicts for defendant. For that reason I would reverse.

Plaintiff was within 2 weeks of his 14th birthday at the time of this accident. He had been swimming since he was 8 or 9 years of age. During the summer months prior to his injury he had been in the water "almost every day." In reaching the platform which was specifically designed and used for diving, he passed within 20 or 30 feet of the spot where he was hurt. Again, upon his return from the platform to the shore, he was obliged to go *under* the rope stretched between the ends of the two docks at a point where the water was 2½ feet deep. Thus, on two separate occasions he had traversed the line where he subsequently dived, knowing, as he admitted, that the purpose of the rope enclosure was to indicate "shallow water inside." He acknowledged an awareness of the danger inherent in diving where he was unaware of the depth. He had seen no other swimmers dive from the dock and was neither invited nor lulled into doing so himself. The presence of the platform intended for diving and plaintiff's use of it for an hour during the morning clearly negated any suggestion that he was lured to any other area for that purpose.

I cannot agree that a normal adolescent boy with knowledge of the facts has no responsibility to avoid hazards which have been made obvious to him by his own use of the premises, or that in the absence of such knowledge he had no duty to determine the potential danger before plunging from the dock. Pinehurst Co. v. Phelps, 163 Md. 68, 160 A. 736; Stungis v. Wavecrest Realty Co. 124 Neb. 769, 248 N. W. 78; Webb v. Thomas, 133 Colo. 458, 296 P. (2d) 1036; Caruso v. Aetna Ins. Co. (La. App.) 186 So. (2d) 851; 4 Am. Jur. (2d) Amusements and Exhibitions, § 84; Annotation, 1 A. L. R. (3d) 963.