RIGBY, Appellant, vs. HERZFELD-PHILLIPSON COMPANY, Respondent.

*February 11—March 2, 1915.*

*False imprisonment: Unauthorized act of servant: Scope of employment: Ratification: Evidence.*

1. A boy seventeen years old, employed in defendant's department store to move and mark goods, with no duty to watch or protect them and no authority to make sales or address customers, followed plaintiff, a customer, into the street, publicly accused her of stealing goods from the store, and procured her arrest by a policeman, with whom and the boy she returned to the store, where the accusation was repeated and brought to the attention of defendant's superintendent. *Held*, that such acts were not within the scope of the boy's employment and defendant is not liable therefor unless it ratified them.

2. It appearing that the superintendent, when the matter was brought to his attention, neither approved nor disapproved of the charge against plaintiff, but called the house detective and directed him to investigate it; that the detective, after taking the boy aside and talking with him a few minutes, returned and in the presence of the superintendent apologized to plaintiff, saying it was a mistake and that he had no idea she was guilty; that the superintendent did not know plaintiff was being held in restraint of her liberty during the investigation or approve of such restraint; and that the boy was promptly discharged, no ratification was shown although the superintendent himself did not apologize to plaintiff.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Houghton, Neelen & Houghton,* and oral argument by *A. B. Houghton.* They contended, *inter alia,* that the boy was acting in the interest of defendant and in the line of his employment, and that defendant is responsible for his acts. *Southwick v. Estes,* 7 Cush. 385; *Topolewski v. Plankinton P. Co.* 143 Wis. 52, 126 N. W. 554; *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276; *S. C.* 124 Wis. 467, 102 N. W. 891; *Johnston v. C., St. P.,*

*M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424; *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304; *Pfister v. Milwaukee F. P. Co.* 139 Wis. 627, 121 N. W. 938.

For the respondent there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *F. L. McNamara.*

TIMLIN, J.  The appellant, a respectable lady residing in Milwaukee, wife of a physician practicing there, on October 3, 1910, entered the department store known as the Boston Store, operated by the respondent corporation, for the purpose of making purchases.  After transacting her business she left the store and went to a near-by crossing to take a car for home.  A boy about seventeen years of age, in the employment of respondent, followed her out of the store, informed a policeman standing at the crossing that appellant had stolen goods from the toy department of the store, and requested the policeman to arrest her.  This boy had been employed that morning to move and marks goods in the toy department of respondent's store on the third floor and was so engaged during the day.  He had no authority to make sales or to address customers.  He attracted the attention of the crowd on the street by being bareheaded and by vociferously accusing the appellant of theft.  He also rushed in advance of the policeman and seized the appellant in the presence of a crowd of people and again accused her of theft. The policeman crossed over to where she was, took her by the arm, and took her back to the Boston Store.  According to the testimony of the policeman he did not seek her permission to do this or do this because of her consent, but according to her testimony she at the same time demanded that she be taken back, apparently to confront her accusers.  The boy declared he had been watching her for a long time, that she had stolen goods from the toy department, and jostled and pushed her along while she was in custody of the policeman and attempted to get her to go to the toy department or get

the policeman to take her there.   The policeman spoke reprovingly to the lad and suggested that he try to remember he. was addressing a lady.   Before reaching the toy department, which was on the third floor, and upon arriving at the foot of the elevator upon the first floor, it became known that Mr. Herzfeld, the superintendent in charge of the business for the respondent, was near there.   The policeman, the boy, and the appellant stepped over to where Mr. Herzfeld stood. At this point there is some conflict of testimony with reference to whether the boy accused her of theft in the presence of Mr. Herzfeld or whether she complained to Mr. Herzfeld that the boy had accused her of theft, but there is no conflict with reference to what followed.   Mr. Herzfeld said "Wait a moment," turned to the telephone and called a detective connected with the store, who arrived presently and was asked by Mr. Herzfeld to investigate the occurrence.   The detective called the boy aside, held a conversation of several minutes' duration with him, then reappeared and apologized to the appellant, assured her there was a mistake made, and ordered the boy to go back to the toy department and attend to his duties.   The plaintiff demanded that she be searched for the purpose of complete exoneration.   The detective declined to have her searched, assuring her he had no idea she was guilty. Mr. Herzfeld stood by during this whole performance, which occupied five or six minutes, and said nothing except to ask the detective to investigate.   It was then about 6 o'clock, the hour for closing the store.   All parties separated, and the incident was closed except that the next day Mr. Herzfeld caused the boy to be discharged for his conduct in the affair in question.   A crowd followed the policeman, the boy, and the appellant from the street into the store, and there was a crowd around the appellant when the boy accused her of theft in the store.

We do not desire to minimize the wrong and injustice done to a decent woman by a charge of this kind.   The liability of

the respondent cannot, however, be measured solely by the degree of wrong done to the appellant. It is not liable unless it authorized or ratified that wrong. The pursuit, accusation against, or arrest of appellant was not within the scope of the boy's employment. There is nothing to show that the boy had any former acquaintance with the appellant or had any personal malice against her. The boy appears to have been overofficious and "vocal out of all proportion" to his age and position. Whether his conduct was the result of a crude attempt to obtain recognition and advancement or was the result of what Thomas Jefferson calls a "plenitude of puppyism" we need not inquire. These are not uncommon stains on the shining garment of youth—the stigmata of puerility. If he could justify an act otherwise wrongfully done by him in the protection of his master's goods against peril, that would not extend the scope of his agency so as to make the master responsible for his freaks where there was no peril, or answerable for his false charges or false arrests where no duty or charge was committed to him to watch or protect the goods or to make sales or to address customers.

On the question of ratification by the respondent of the boy's acts the only evidence is that the superintendent neither approved nor disapproved of the charges against the appellant, that he referred the matter to the employee of respondent whose duty it was to make such investigations, that the investigation was promptly made and an apology tendered the appellant, and that no knowledge was brought to the superintendent that the appellant was being held in restraint of her liberty while such investigation was being made, nor was such restraint apparent, although there was restraint on the street and in the store up to the time when the appellant first confronted the superintendent. The fresh young man was discharged with reasonable promptness.

We find no evidence that Mr. Herzfeld either knew or approved of such restraint during the few minutes taken by the

detective for investigation. Some claim is made that the superintendent should have apologized to the appellant, and it seems as if courtesy on his part might require an ample apology, but having turned the matter over to the detective who had charge of such complaints for the respondent, and the latter having disclaimed all restraint upon or charges against the appellant and tendered an ample apology within a few minutes, silence on the part of Mr. Herzfeld satisfied the law. We are constrained to believe that the learned circuit court committed no error in directing judgment for the defendant upon all the evidence in the case.

*By the Court.*—Judgment affirmed.