[No. 33409.   Department One.   May 17, 1956.]

JAMES P. ROGERS, *Appellant,* v. SEARS, ROEBUCK & COMPANY, *Respondent.*[1]

[1]Reported in 297 P. (2d) 250.

*Cooney & Cooney* and *Samuel W. Fancher,* for appellant.

*Paine, Lowe, Coffin, Ennis & Herman* and *Sidney Schulein,* for respondent.

SCHWELLENBACH, J.—Plaintiff commenced action for false imprisonment against defendant, alleging damages in the amount of $50,277. Upon trial, the jury rendered a verdict for the plaintiff in the sum of $5,000. The trial court granted judgment notwithstanding the verdict and dismissed the action with prejudice. This appeal follows.

A motion for judgment n.o.v. admits the truth of the plaintiff's evidence and all inferences reasonably to be drawn therefrom; and the evidence is to be interpreted most strongly against the defendant, and in the light most favorable to the plaintiff. *Grove v. D'Allessandro,* 39 Wn. (2d) 421, 235 P. (2d) 826.

With the above rule in mind, we examine the evidence. December 5, 1952, James P. Rogers, accompanied by his eleven-year-old daughter, went into the retail store of Sears, Roebuck & Company, in Spokane, and purchased an electrical outlet. The price was fifty-seven cents. When he arrived home, he could not find a faceplate for it, so the following morning, December 6, 1952, he returned to the store with the outlet. He showed it to Elmer VanHoose, a clerk, and asked for a faceplate to fit it. They did not

have the proper shade for his walls, so he put the outlet in his pocket and walked out. He went to the Payless Drug Store, a short distance from Sears, where he purchased a faceplate.

In the meantime, VanHoose, feeling that Rogers had stolen the outlet, proceeded to follow him. At the door, he told a lady clerk to notify Mr. Olson, the security officer at the store, what he was doing. When he saw Rogers in the Payless, he called the police. When an officer arrived, Rogers was coming out of an electrical shop. VanHoose and the officer each held him by an arm, and VanHoose said, "That is the man, officer." VanHoose reached into Rogers' pocket, pulled out the outlet and accused Rogers of stealing it. He told the officer that he saw Rogers take it off the counter. They then took him to the police station in a police car.

At the station, he was not booked or arrested. The officer asked VanHoose if he was sure Rogers stole it and VanHoose said, 'I seen you do it, don't deny it." After a while, Van-Hoose called the store and explained the situation to the manager, who told him to do nothing and that he would send Mr. Olson over. He also said, "You sure got us into a peck of trouble."

When Olson arrived about twenty or thirty minutes later, he asked Rogers what it was all about. Rogers suggested that Olson call his daughter at home. They went into another room, and Olson talked to the daughter on the telephone. After talking to her, Olson said to Rogers, "I think there has been an awful mistake on somebody's part." They then went back into the other room, where Olson talked to the officers and then said, "You might as well go home and forget about it. There has been a terrible mistake." The testimony is rather indefinite as to the exact length of time Rogers was detained. It was from about 11:00 a.m. to between 1:30 and 2:00 p.m.

▮▮▮▮ False imprisonment is the unlawful restraint by one person of the physical liberty of another. A customer or patron of a store who apparently has not paid for what he has received, may be detained for a reasonable length of time to investigate the circumstances. The liability of a

master for the act of his servant in causing a false imprisonment depends upon whether the master previously authorized the act; or subsequently ratified it; or whether the act was within the scope of the servant's employment. Even though a master has not authorized the act, he may ratify it, and thereby make himself liable. Ratification may be by acts of omission or commission. 22 Am. Jur. 353, False Imprisonment, § 2, *et seq*.

■ Was Mr. Rogers falsely imprisoned? He was unlawfully restrained of his liberty at the instance of Mr. Van-Hoose for a period of between two-and-a-half and three hours. Respondent contends that he was not placed under arrest and that he was free to go at any time. People just do not walk away from a policeman on the street, or from a police station, under circumstances such as these. Mr. Rogers was falsely imprisoned.

■ When Mr. VanHoose falsely imprisoned Mr. Rogers, was he acting within the scope of his employment? He had never been instructed by Sears to accuse or arrest a customer. The only persons authorized to do so were the security officer, the manager, and the operating superintendent. The security officer held various meetings with the employees on what they should and should not do if they saw a customer putting something into his pocket without paying for it. They were not to apprehend him. Their duty was to call one of the three officials above mentioned. Van-Hoose had had previous experience as a merchant policeman. He had applied to Olson for a position as his deputy. He did not apprehend Rogers in the store. He followed him down the street for over a block. He clearly was not acting within the scope of his employment when he falsely imprisoned Mr. Rogers.

Did the company ratify the act of false imprisonment? The first knowledge the manager had of this affair was when VanHoose called from the police station. The manager told him to do nothing and to wait for Olson. Olson returned from lunch at 1:15 and was told to report to the manager. After being told the circumstances, he went to the police station. He arrived there about 1:30. Rogers testified that

he waited approximately twenty minutes or one-half hour for Olson to get there. It must have been 1:00 o'clock or 1:10 when VanHoose first notified the manager. Rogers was released between 1:30 and 2:00.

A case where the facts were somewhat similar to those of the instant case was *Rigby v. Herzfeld-Phillipson Co.*, 160 Wis. 228, 151 N. W. 260. There, a boy followed a lady out of the store where he was employed and informed a policeman that she had stolen some goods and requested that he arrest her. The policeman took her back into the store and stepped up to the superintendent, who said, "Wait a moment," turned to the telephone, and called a store detective, who arrived presently and was asked by the superintendent to investigate the occurrence. The detective called the boy aside, held a conversation of several minutes' duration with him, reappeared and then apologized to the lady, assuring her that a mistake had been made. At the close of the evidence in a false imprisonment action, the trial court directed judgment for the defendant. In affirming the judgment, the Wisconsin court said:

"We do not desire to minimize the wrong and injustice done to a decent woman by a charge of this kind. The liability of the respondent cannot, however, be measured solely by the degree of wrong done to the appellant. It is not liable unless it authorized or ratified that wrong. The pursuit, accusation against, or arrest of appellant was not within the scope of the boy's employment. . . .

"On the question of ratification by the respondent of the boy's acts the only evidence is that the superintendent neither approved nor disapproved of the charges against the appellant, that he referred the matter to the employee of respondent whose duty it was to make such investigations, that the investigation was promptly made and an apology tendered the appellant, and that no knowledge was brought to the superintendent that the appellant was being held in restraint of her liberty while such investigation was being made, nor was such restraint apparent, although there was restraint on the street and in the store up to the time when the appellant first confronted the superintendent. The fresh young man was discharged with reasonable promptness.

"We find no evidence that Mr. Herzfeld either knew or approved of such restraint during the few minutes taken by the detective for investigation. Some claim is made that the superintendent should have apologized to the appellant, and it seems as if courtesy on his part might require an ample apology, but having turned the matter over to the detective who had charge of such complaints for the respondent, and the latter having disclaimed all restraint upon or charges against the appellant and tendered an ample apology within a few minutes, silence on the part of Mr. Herzfeld satisfied the law."

█ The matter was disposed of much more promptly in the *Rigby* case than it was here. However, it cannot be said that Olson, the security officer, did not act promptly. He arrived at the police station about 1:30 and appellant was released between 1:30 and 2:00. Olson's investigation was made with reasonable speed. Nor can we say that the manager was dilatory. His first knowledge of the affair was between 1:00 and 1:10. (Between 11:00 and 1:00 or 1:10, appellant was being unlawfully restrained of his liberty by VanHoose, without authorization by the store.) Olson returned from lunch at 1:15 and, after being informed of the occurrence, went to the station. Under the circumstances of this case, the respondent acted with sufficient promptness to satisfy the rule.

After his release, appellant went to the Davenport Hotel and talked to his wife, who was working there. He then went back to the store and talked to the manager. While that conversation was taking place, his wife called the manager. According to his wife, whose testimony was corroborated by appellant, the manager told her to destroy the receipt. According to the manager, appellant's wife gave him the cash register number from the receipt, and he then checked and located the number on the tape for the previous day's business; and when appellant's wife asked if he wanted the receipt, he replied that it was not necessary because they had sufficient records in the store. Though we apply the rule announced at the beginning of the opinion regarding the interpretation of evidence when ruling on a motion for judgment n.o.v., it must be remembered that, at the time

this conversation took place, appellant had been cleared of all charges and released from unlawful restraint. The conversation had no connection with the question of ratification.

Appellant was unlawfully restrained of his liberty by Van-Hoose, an employee of respondent. In causing such restraint, VanHoose did not act within the scope of his employment. Respondent did not ratify or condone VanHoose's act.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.

---

July 3, 1956. Petition for rehearing denied.

[1]Reported in 297 P. (2d) 247.